# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

**F I L E D**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

AUG 0 6 2012

**GREGORY C. LANGHAM**
CLERK

Civil Action No. _____

(To be supplied by the court)

CARY ARNOLD A., et al., _____, Plaintiff,

v.

HICKENLOOPER JOHN, et al., _____,
State of Colorado, Governor,

RITTER BILL, et al., _____,
State of Colorado, former Governor,

SUTHERS JOHN W., et al., _____,
State of Colorado, Attorney General,

CLEMENTS TOM, et al., _____,
CDOC, Executive Director,

ZAVARES ARISTIDES, et al., _____,
CDOC, former Executive Director,

TIMME REA, et al., _____,
CTCF, Warden,

PLOUGLE PAMELA, et al., _____,
CTCF, former Warden,

TESSIER DAVID, et al., _____, Defendant(s).
CTCF, Health Services Administrator,
(List each named defendant on a separate line.)

---

## PRISONER COMPLAINT

---

(Rev. 1/30/07)

CROUNK JOYCE, et al.,_____,
CTCF, former Health Services
Administrator,


TIONA SUSAN M. M.D., et al.,_____,
CTCF, Health Services Physician,


FISH DePENA LINSEY M.D., et al.,_____,
CTCF, former Health Services
Physician,


QUINN AMORY, et al.,_____,
Cotter Corporation, President,


HAMRICK JOHN, et al.,_____,
Cotter Corporation, Vice President,


PACE FRANK, et al.,_____,
General Atomics, President,


STIEHL MIKE, et al.,_____,
Fremont County, Commissioner,


BUGLEWICZ JOHN V. M.D., et al.,_____,
CTCF, Health Services Physician,
and Fremont County Commissioner,


GRANTHAM KEVIN, et al.,_____,
R-Canon City, Colorado State Senator,


MAYES ALANO, et al.,_____,
Canon City, City Attorney,


SHOEMAKER DAVID, et al.,_____,Defendants
CTCF, Lieutenant,

WILLIAMS RONALD, et al., _____,
CTCF, Lieutenant,


SULLIVAN GARY, et al., _____,
CTCF, Sergeant,


TURNER CHRISTINA, et al., _____,
CTCF, Sergeant,


BURNS ROBERT, et al., _____,
CTCF, Correctional Officer,


BRATINA DANIEL, et al., _____,
CTCF, Correctional Officer,


DOE JOHN #2, et al., _____,
J-COR Mechanical, President,


DOE JOHN #3, et al., _____,
Mountain Masonry, President,


ACHEN RODNEY, et al., _____,Defendants
CTCF, Food Services Captain,

## A. PARTIES

1.  Plaintiff **Arnold A. Cary,** is and was at all times mentioned herein a prisoner of the State of Colorado, in the custody of the Colorado Department of Corrections.  He is currently confined in Colorado Territorial Correctional Facility (CTCF), in Canon City, Colorado  81215-1010.

2.  Defendant **John Hickenlooper,** is the Governor of the State of Colorado.  His address is, Colorado State Capital, 200 East Colfax Avenue, Denver, Colorado  80203.

At the time the claims alleged in the complaint arose, the defendant was acting under color of state law.

As governor of the State of Colorado he is legally responsible for insuring the safety and welfare of all the prisoners in the states correctional system and for the appointment of the CDOC's Executive Director, to oversee the states correctional system daily functions.  This defendants actual knowledge of the hazards conditions that existed, will show willful negligence and malice, which demonstrates deliberate indifference.  Defendant Hicken-looper, is sued in his official and individual capacity.

3.  Defendant **Bill Ritter,** is the former Governor of the State of Colorado.  His present address is unknown.

At the time the claims alleged in the complaint arose, the defendant was acting under color of state law.

During time in office as governor of the State of Colorado he was legally responsible for insuring the safety and welfare of all

## A. PARTIES

the prisoners in the states correctional system and for the appointment of CDOC's Executive Director Aristides Zavares, to oversee the states correctional system daily functions.  This defendant actual knowledge of the hazards conditions that exis-ted will show willful negligence and malice, which demonstrates deliberate indifference.  Defendant Ritter, is sued in his offic-ial and individual capacity.

4.  Defendant **John Suthers**, is the Attorney General of the State of Colorado.  His address is 1525 Sherman Street, 7th Floor. Denver, Colorado  80203.

At the time the claims alleged in the complaint arose, the defendant was acting under the color of state law.

Defendant Suthers, is the Attorney General of the State of Colorado and is legally responsible for the overall operations as chief law officer of the State of Colorado and is the head of it's legal department, and is the Attorney General during the plain-tiff's incarceration.  This defendant actual knowledge of hazards conditions that existed, will show willful negligence and malice, which demonstrates deliberate indifference.  Defendant Suthers, is sued in his official and individual capacity.

5.  Defendant **Tom Clements**, is the Executive Director, of the State of Colorado Department of Corrections (CDOC).  His address is, 2862 South Circle Drive, Colorado Springs, Colorado  80906.

At the time the claims alleged in the complaint arose, the defendant was acting under the color of state law.

-5-

## A. PARTIES

Defendant Clements, is the Executive Director of the Colorado Department of Corrections, and is legally responsible for the overall operations of the CDOC, and each institution under his jurisdiction including Colorado Territorial Correctional Facility (CTCF), and is the Executive Director during plaintiff's incarceration. This defendant had actual knowledge of hazards conditions that existed, will show willful negligence and malice, which demonstrates deliberate indifference. Defendant Clements, is sued in his official and individual capacity.

6. Defendant **Aristides Zavares**, is the former Executive Director of the Colorado Department of Corrections (CDOC). His address is unknown.

At the time the claims alleged in the complaint arose, the defendant was acting under the color of state law.

Defendant Zavares, was the former Executive Director of the Colorado Department of Corrections, and was legally responsible for the overall operations at that time frame of appointment at CDOC, and was the Executive Director during plaintiff's incarceration. This defendant had actual knowledge of hazards conditions that existed, will show willful negligence and malice, which demonstrates deliberate indifference. Defendant Zavares, is sued in his official and individual capacity.

7. Defendant **Rea Timme**, is the Warden of Colorado Territorial Correctional Facility (CTCF), P.O. Box 1010 Canon City, Colorado 81215-1010.

## A. PARTIES

At the time the claims alleged in the complaint arose, the defendant was acting under the color of state law.

Defendant Timme, is legally responsible for the overall operations of CTCF and for the welfare of all prisoners of that facility, and is the Warden during plaintiff's incarceration.  This defendant had actual knowledge of hazards conditions that existed, will show willful negligence and malice, which demonstrates deliberate indifference.  Defendant Timme, is sued in her official and individual capacity.

8.  Defendant **Pamela Ploughe,** is the former Warden of Colorado Territorial Correctional Facility (CTCF).  Her present address is unknown.

At the time the claims alleged in the complaint arose, the defendant was acting under the color of state law.

Defendant Ploughe, is the former Warden of CTCF, and was legally responsible for the overall operations of CTCF, and was the Warden during the plaintiff's incarceration.  This defendant had actual knowledge of hazards conditions that existed, will show willful negligence and malice, which demonstrates deliberate indifference.  Defendant Ploughe, is sued in her official and individual capacity.

9.  Defendant **David Tessier,** is the Health Services Administrator, of Colorado Territorial Correctional Facility (CTCF), P.O. Box 1010 Canon City, Colorado  81215-1010.

## A. PARTIES

At the time the claims alleged in the complaint arose, the defendant was acting under the color of the state law.

Defendant Tessier, is the Health Services Administrator and is in charge of the daily functions of the medical facility at CTCF, and is the Health Administrator during the plaintiff's incarceration.  This defendant had actual knowledge of hazards conditions that existed, will show willful negligence and malice, which demonstrates deliberate indifference.  Defendant Tessier, is sued in his official and individual capacity.

10. Defendant **Joyce Crounk,** is the former Health Services Administrator, at Colorado Territorial Correctional Facility (CTCF).  Her present address is unknown.

At the time the claims alleged in the complaint arose, the defendant was acting under the color of the state law.

Defendant Crounk, is the former Health Services Administrator during plaintiff's incarceration.  This defendant had actual knowledge of hazards conditions that existed, will show willful negligence and malice, which demonstrates deliberate indifference.  Defendant Crounk, is sued in her official and individual capacity.

11. Defendant **Susan M. Tiona M.D.,** is the Health Services Medicial physician at Colorado Territorial Correctional Facility (CTCF), P.O. Box 1010 Canon City, Colorado  81215-1010.

At the time the claims alleged in the complaint arose, the defendant was acting under the color of the state law.

## A. PARTIES

Defendant Tiona, M.D., is a medical doctor at CTCF, and is legally responsible for the medical welfare of all prisoners of that facility, and was a doctor during plaintiff's incarceration. She treated the symptoms of radiation exposure, but did not diagnosis the problem. This defendant had actual knowledge of hazards conditions that existed, will show willful negligence and malice, which demonstrates deliberate indifference. Defendant Tiona, M.D., is sued in her official and individual capacity.

12. Defendant **Linsey Fish DePena, M.D.,** is the former Health Services Medical Physician at Colorado Territorial Correctional Facility (CTCF). Her present address is unknown.

At the time the claims alleged in the complaint arose, the defendant was acting under the color of the state law.

Defendant Fish DePena, M.D., was a medical doctor at CTCF and is legally responsible for the medical welfare or all prisoners of that facility, and was a doctor during plaintiff's incarceration. She treated the symptoms of radiation exposure, but did not diagnosis the problem. This defendant had actual knowledge of hazards conditions that existed, will show willful negligence and malice, which demonstrates deliberate indifference. Defendant Fish DePena, M.D., is sued in her official and individual capacity.

## A. PARTIES

13. Defendant **Amory Quinn**, is the President of Cotter Corporation, 8300 Glencoe Valley Road  Golden, Colorado  80401.

At the time the claims alleged in the complaint arose, the defendant was acting under the color of the state law.

Defendant Quinn, is legally responsible for the day to day operations of the Cotter Corporation Mill, and to insure compliance with all federal and state laws as to the operation of ore milling, as it pertains to public health and safety.  This defendant had actual knowledge of hazards conditions that existed, will show willful negligence and malice, which demonstrates deliberate indifference.  Defendant Quin, is sued in his official and individual capacity.

14. Defendant **John Hamrick**, Vice President of Cotter Corporation, 8300 Glencoe Valley Road  Golden, Colorado  80401.

At the time the claims alleged in the complaint arose, the defendant was acting under the color of the state law.

Defendant Hamrick, is legally responsible for assisting in the day to day operations of the Cotter Corporation Mill, and to insure compliance with all federal and state laws to the operation of ore milling, as it pertains to public health and safety. This defendant had actual knowledge of hazards conditions that existed, will show willful negligence and malice, which demonstrates deliberate indifference.  Defendant Hamrick, is sued in his official and individual capacity.

## A. PARTIES

15. Defendant **Frank Pace,** is the President of General Atomics. 3550 General Atomics Court  San Diego, California  92121.

At the time the claims alleged in the complaint arose, the defendant was acting under the color of the state law.

Defendant Pace, is legally responsible for the management operations of the Cotter Corporation Mill, as an officer and stockholder of the parent company General Atomics, he is responsible for compliance with all federal and state laws as to the operation of ore milling as it pertains to public health and safety. This defendant had actual knowledge of hazards conditions that existed, will show willful negligence and malice, which demonstrates deliberate indifference.  Defendant Pace, is sued in his official and individual capacity.

16. Defendant **Mike Stiehl,** is a Fremont County Commissioner. 615 Macon Avenue  Canon City, Colorado  81212.

At the time the claims alleged in the complaint arose, the defendant was acting under the color of the state law.

Defendant Stiehl, is legally responsible for the care, safety and welfare of the people of Fremont County, and all fiduciary duties assigned to the office of County Commissioner, to include the public interest law.  This defendant had actual knowledge of hazards conditions that existed, will show willful negligence and malice, demonstrates deliberate indifference.  Defendant Stiehl, is sued in his official and individual capacity.

## A. PARTIES

17. Defendant **John V. Buglewicz, M.D.**, is a Health Services Medical Physician at Colorado Territorial Correctional Facility (CTCF) and is a Fremont County Commissioner.  CTCF P.O. Box 1010 Canon City, Colorado  81215-1010.

At the time the claims alleged in the complaint arose, the defendant was acting under the color of the state law.

Defendant Buglewicz, M.D., is legally responsible for the care, safety and welfare of the people of Fremont County, and as a medical doctor at CTCF he treated the symptoms of radiation exposure but did not diagnosis the problem.  Also, the fiduciary duties assigned to the office of County Commissioner, to include the public interest law.  This defendant had actual knowledge of hazards conditions that existed, will show willful negligence and malice, demonstrates deliberate indifference.  Defendant Buglewicz, M.D., is sued in his official and individual capacity.

18. Defendant **Kevin Grantham**, is a Colorado State Senator, R-Canon City 318 West Circle Drive  Canon City, Colorado  81212.

At the time the claims alleged in the complaint arose, the defendant was acting under the color of the state law.

Defendant Grantham, is legally responsible for the care, safety and welfare of the people of Colorado in particular Fremont County and all fiduciary duties assigned to the office of State Senator, to include the public interest law.  This defendant had actual knowledge of hazards conditions that existed, will show

## A. PARTIES

willful negligence and malice demonstrates deliberate indifference.
Defendant Grantham is sued in his official and individual capacity.
19. Defendant **Alano Mayes,** is a City Attorney for Canon City.  His
address is, 128 Main Street Canon City, Colorado  81212.

At the time the claims alleged in the complaint arose, the
defendant was acting under the color of the state law.

Defendant Mayes, is legally responsible for the care, safety
and welfare of the people of Canon City and within Fremont County
and has a fiduciary responsible assigned to the office of City
Attorney, to include public interest law.  This defendant had act-
ual knowledge of hazards conditions that existed, will show will-
ful negligence and malice, which demonstrates deliberate indiffer-
ence.  Defendant Mayes, is sued in his official and individual
capacity.

20. Defendant **David Shoemaker,** is a Lieutenant at Colorado Terri-
torial Correctional Facility (CTCF).  His address is, P.O. Box
1010 Canon City, Colorado  81215-1010.

At the time the claims alleged in the complaint arose, the
defendant was acting under the color of the state law.

Defendant Shoemaker, is Cell House One's Lieutenant, and is
legally responsible for the care, safety and welfare of the inmates
within his jurisdiction.  This defendant had actual knowledge of
hazards conditions that existed, will show willful negligence and
malice, which demonstrates deliberate indifference.  Defendant
Shoemaker, is sued inhis official and individual capacity.

## A. PARTIES

21. Defendant **Ronald Williams**, is a Lieutenant at Colorado Territorial Correctional Facility (CTCF), P.O. Box 1010 Canon City, Colorado  81215-1010.

At the time the claims alleged in the complaint arose, the defendant was acting under the color of the state law.

Defendant Williams, is a Lieutenant at CTCF, and is legally responsible for the care, safety and welfare of the inmates within his jurisdiction.  This defendant had actual knowledge of hazards conditions that existed, will show willful negligence and malice, which demonstrates deliberate indifference.  Defendant Williams, is sued in his official and individual capacity.

22. Defendant **Gary Sullivan**, is a former Sergeant at Colorado Territorial Correctional Facility (CTCF).  His present address is unknown.

At the time the claims alleged in the complaint arose, the defendant was acting under the color of the state law.

Defendant Sullivan, was a Sergeant in Cell House One, and is legally responsible for the care, safety and welfare of the inmates within his jurisdiction.  This defendant had actual knowledge of hazards conditions that existed, will show willful negligence and malice, which demonstrates deliberate indifference.  Defendant Sullivan, is sued in his official and individual capacity.

23. Defendant **Christina Turner**, is a Sergeant at Colorado Territorial Correctional Facility (CTCF), P.O. Box 1010 Canon City, Colorado  81215-1010.

## A. PARTIES

At the time the claims alleged in the complaint arose, the defendant was acting under the color of the state law.

Defendant Turner, is a Sergeant in Cell House One, and is legally responsible for the care, safety and welfare of the inmates within her jurisdiction.  This defendant had actual knowledge of hazards conditions that existed, will show willful negligence and malice, which demonstrates deliberate indifference.  Defendant Turner, is sued in her official and individual capacity.

24. Defendant **Robert Burns,** is a Correctional Officer at Colorado Territorial Correctional Facility (CTCF), P.O. Box 1010 Canon City, Colorado  81215-1010.

At the time the claims alleged in the complaint arose, the defendant was acting under the color of the state law.

Defendant Burns, is a Correctional Officer, in Cell House One, and is legally responsible for the care, safety and welfare of the inmates within his jurisdiction.  This defendant had actual knowledge of hazards conditions that existed, will show willful negligence and malice, which demonstrates deliberate indifference. Defendant Burns, is sued in his official and individual capacity.

25. Defendant **Daniel Bratina,** is a Correctional Officer, at Colorado Territorial Correctional Facility (CTCF), P.O. Box 1010 Canon City, Colorado  81215-1010.

At the time the claims alleged in the complaint arose, the defendant was acting under the color of the state law.

## A. PARTIES

Defendant Bratina, is a Correctional Officer, in Cell House One, and is legally responsible for the care, safety and welfare of the inmates within his jurisdiction.  This defendant had actual knowledge of hazards conditions that existed, will show willful negligence and malice, demonstrates deliberate indifference. Defendant Bratina, is sued in his official and individual capacity.

26. Defendant **John Doe #2,** is the President, of J-COR Mechincal. 15800 West 5th Avenue  Golden, Colorado  80401.

At the time the claims alleged in the complaint arose, the defendant was acting under the color of the state law.

Defendant John Doe #2, is the President of J-COR Mechincal, a plumbing contractor and is legally responsible for the method of work performed at CTCF's remodeling project, and compliant with the Uniform Building Code Requirements.  This defendant had actual knowledge of the hazards conditions that existed, will show willful negligence and malice, which demonstrates deliberate indifference.  Defendant John Doe #2, is sued in his official and individual capacity.

27. Defendant **John Doe #3,** is the President, of Mountain Masonry. 1850 Lucas  Canon City, Colorado  81212.

At the time the claims alleged in the complaint arose, the defendant was acting under the color of the state law.

## A. PARTIES

Defendant John Doe #3, is the President of Mountain Masonry a concrete and masonry contractor, and is legally responsible for The method of work performed at CTCF's remodeling project, and compliant with the Uniform Building Code Requirements.  This defendant had actual knowledge of the hazards conditions that existed, will show willful negligence and malice, which demonstrates deliberate indifference.  Defendant John Doe #3, is sued in his official and individual capacity.

28. Defendant **Rodney Achen**, is a Captain at Colorado Territorial Correctional Facility (CTCF), P.O. Box 1010 Canon City, Colorado 81215-1010.

At the time the claims alleged in the complaint arose, the defendant was acting under the color of the state law.

Defendant Achen, is a Captain at CTCF, and in charge of food services, and is legally responsible for the care, safety and welfare of the inmates within his jurisdiction.  This defendant had actual knowledge of hazards conditions that existed, will show willful negligence and malice, which demonstrates deliberate indifference.  Defendant Achen, is sued in his official and individual capacity.

## B. JURISDICTION

1. I assert jurisdiction over my civil rights claims pursuant to:

   **X**  28 U.S.C. § 1343 and 42 U.S.C. § 1983 (state prisoners).

2. Plaintiff's seek declaratory relief pursuant to:

   **X**  28 U.S.C. § 2201 and 2202.

3. Plaintiff's claims for injunctive relief are authorized by:

   **X**  28 U.S.C. § 2283 and 2284 and Rule 65 of the Federal Rules
       of Civil Procedure.

4. The court has supplemental jurisdiction over plaintiff's state
   law claims under:

   **X**  28 U.S.C. § 1367.

## C. NATURE OF THE CASE

29. Alleged and upon information and belief the plaintiff states
that:  This document is to explain and describe the current condi-
tion of confinement of the plaintiff who is incarcerated at Colo-
rado Territorial Correctional Facility (CTCF).  Plaintiff asks the
court to review the three claims within the Cause of Action, as it
has a large amount of technological and historical information
contained within it.  Plaintiff has made every effort to condense
as much as possible.  However, in a case of this nature a great
deal of technologically and detailed information is a must for a
clear understanding.

30. There are many health and life threatening conditions of which
the tax paying public has little or no knowledge of.  The follow-
ing information will describe the hazards conditions of toxic con-
taminates such as; uranium mill by-products, trichloroethylene

## C. NATURE OF THE CASE

(TCE)($C_2HCI_3$), heavy metals, asbestos, black mold, bacteria, construction dust, and infestation of vermin.

31. Initially the plaintiff's investigation revealed these toxins, and their locations, which will include all influential parties as illustrated in various governmental reports, newspaper articles and television investigative commentary.  The information describes the violations of federal health , safety and environmental standards by various individuals, companies, and agencies.  These agencies and individuals who have known of these toxic contamination problem for years, and chosen not to act in a timely manner.  Consequently, failing their own policies, and regulations and instead, assisted in giving warning to cover up the true facts.  That plumes of various toxins continue to spread throughout the Canon City area, including CTCF.  However, dealing with the radioactive and chemical toxins, experts agree that all uranium mill sites in the United States, have been impossible to contain the toxic elements.  The fact that none of the authorities mention in this complaint, did not even attempt to give notice to the plaintiff, and did not protect the environment or health and safety of the plaintiff.  In addition to the citizens living in the area, and to the unknowing tourists that visit the State of Colorado, and Canon City area in particular.  This violates plaintiff's and others similarly situated Constitutional Amendment rights.

## C. NATURE OF THE CASE

32. CDOC and CTCF to include all staff, employees of each depart-
ment, and the State of Colorado, and their agencies knew of the
toxic contaminates from the Cotter uranium mill since the mid
1980's (30 years), when it was declared a National Super-Fund
clean up site by the EPA.  Over the years numerous personal injury
and liability lawsuits have been filed by citizens in and around
Canon City.  The officials of CDOC did not inform inmates within
the Canon City Prison Complex, along the Arkansas River Valley,
including CTCF, about the facts of the water and air contaminate
conditions, or offer any solution to protect the inmates, which
violated the plaintiff's Constitutional rights.  Numerous inmates
are becoming ill, hospitalize and dying.  While a number of inmates
that died last year appear to have symptoms of radiation and toxic
exposure.  Therefore, the plaintiff's experience of this barbarous
violation of the plaintiff's VIII Amendment right to the Constitu-
tion of cruel and unusual punishment, and all other violations to
the plaintiff's Constitutional rights as noted in this document.

## D. CAUSE OF ACTION

State concisely every claim that you wish to assert in this action.  For each claim, specify the right that allegedly has been violated and state all supporting facts that you consider important, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim.  You do not need to cite specific cases to support your claim(s).  If additional space is needed to describe any claim or to assert more than three claims, use extra paper to continue that claim or to assert the additional claim(s).  The additional pages regarding the cause of action should be labeled "D. CAUSE OF ACTION."

1. Claim One: **CRUEL AND UNUSUAL PUNISHMENT/EIGHTH AMENDMENT VIOLATION**

   Supporting Facts:

33. Alleged and upon information and belief the plaintiff states that: Plaintiff has determined that Cotter Corporation, and it's parent company General Atomics, were Cold War suppliers of uranium.  They started operations of refining ore in 1958, located $1\frac{1}{2}$ miles from Canon City and CTCF.  Cotter disposed of various types of toxic waste, and dumped by-products from the ore milling into eleven unlined ponds.  This procedure was standard operation until 1982, when the ponds were replaced with two larger lined impoundment ponds.  These liners were installed over rocks, resulting in the liners being punctured.  Cotter is now filling the ponds with dismantled mill machinery and contaminated topsoil, amounting to 4.4 million cubic yards of radioactive and chemically toxic material in the ponds.

34. Plaintiff found a report on the quality of Canon City's drinking water.  The findings were that the water was found to contain carcinogenic toxins, and the amount therein exceeded all federal and state standards.  The data provided by the State of Colorado Department of Public Health and Environment (CDPHE), shows the readings for these contaminates were over exceptable safe limits,

(Rev. 1/30/07)

## D. CAUSE OF ACTION

and these contaminates can be transmitted by both air and water.
The contaminates were found to be 713 parts per billion (ppb), in
February and July 2011, which are the most recent tests reported
by the CDPHE which states that the readings were 89 ppb.  The
CDPHE, also stated that anything higher than 30 ppb is a health
risk.  These contaminates traveled into the ground water and small
tributaries that flow into the Arkansas River.

35. It is common knowledge outside the walls of CTCF, that uncheck-
ed toxins contaminates found their way into the Arkansas River which
flows through Canon City.  In fact, part of the Arkansas River is
diverted into a canal that flows through the heart of CTCF.  It is
from this source that CTCF draws it's water for irrigation of lawns
gardens, and other uses.  Defendant Alano Mayes, City Attorney for
Canon City Water Treatment Facility, is aware of the serious health
risks imposed upon the plaintiff, as well as inmates at CTCF, and
he acted with deliberate indifference when he failed to notify the
plaintiff of toxic carcinogenic, including the chemical trichloro-
ethylene.  Which is known to cause damage to the liver, kidneys,
nerves, and circulatory system if ingested or inhaled.  Plaintiff
is domiciled at CTCF, and did not receive any notification of the
water contamination.  This violated the plaintiff's Eighth Amend-
ment rights.

36. A citizen group of Canon City, "Western Mining Action Project",
filed an addendum to their pervious lawsuit, filed in the Denver
District Court.  They alleged that recent dismantling activity at

## D. CAUSE OF ACTION

Cotter uranium mill is being conducted without a required reclama-
tion plan, and presents a public health risk as toxic, and radio-
active waste stored in ponds and buried on site leaches into the
water table.  This addendum, states that Canon City has frequent
high winds, causing an even greater risk from airborne friable
Yellowcake U308 uranium, and other contaminates being blown over
Canon City, which includes CTCF.

37. Radon emissions from the tailing impoundment ponds at Cotter
Mill have recently increased dramatically due to evaporation to
prevent further leakage through the liners.  Radon gas attaches
to nuclides dust particles and become radioactive.  Radon gas is
deposited into the soil and then scavenged, being re-deposited
each time the wind blows.  "Vapors can seep up through the soil
and get into homes.  Then you have not only a drinking issue but
a inhalation risk", EPA spokeswoman Sonya Pennock said.

38. These contaminates were identified several years earlier by
the EPA, and CDPHE.  The CDPHE, acting director Martha Rudloph,
has declined to comment on any allegations.  The State of Colorado
stands to bear the expense of the clean-up if Cotter walks away
from their responsibilities, which they have threatened to do on
more than one occasion.

39. A recent television report, disclosed that the knowledge and
the fear of contaminates in the water are beginning to be known,
as reported by KKTV Channel 11 News Reporter Ms. Mecca Rayne
said, that Colorado Springs has refused to approve a water pipe-

## D. CAUSE OF ACTION

line project, that would draw water from the Pueblo Reservoir, which is fed by the Arkansas River, because of toxins in the water.

40. In October of 2011, Amory Quinn, of Cotter Corporation, said, "Documents showing that samples collected from the wells north of the mill were analyzed at an outside lab, of which this indicated levels of trichloroethylene in concentrations from those wells at 1800 ppb, 1200 ppb, 490 ppb".  The EPA's safe level is "5" ppb, EPA spokesperson Sonya Pennock said, "plumes of toxins have been detected moving underground toward Canon City".

41. Another report dated June 28, 2011 regarding the ground water tests on Cotter's property and adjacent land to the mill, by the CDPHE Director Chris Urbina stated, "The cancer causing chemical trichloroethylene was detected in the ground water at concentrations up to 360 times federal health limits".

42. Russ Walker, professor of environment sciences at Colorado Mesa University said, "In the summer of 2011, Cotter committed a irresponsible act of dumping an additional 90,000 gallons of solvent, radioactive mill material and contaminated debris in the ponds inappropriately.  You don't need a Ph.D., to think that's not the best thing if there are holes that are un-repaired and leak", said Walker, who in the 1980's worked on a Superfund clean up for the Florida Health Department.

43. Plaintiff's research has found significant information of fact and as a preamble discloses the following:  Nuclear plants and similar facilities where radioactive elements are produced, expose

## D. CAUSE OF ACTION

other materials to radioactive nuclides causing these stable mat-
erials to absorb neutrons and other types of particles, and become
radioactive themselves.  Particle radiation or ionizing radiation
consist of tiny bits of matter, which is radioactive, causing mat-
ter to release certain forms of radiation as a result of changes
in the nuclides of the atoms that make up the matter.  This proc-
ess of an atoms giving off particles is called radioactive decay:
there are four difference types of particle radiation alpha part-
icles, beta particles, protons, and neutrons.  These tailings
contain leftover Uranium, Polonium, Radium, Lead 210, Thorium, and
radioactive gases such as Radon and Thoron.  It varies, but some
of these nuclear waste materials remain radioactive and dangerous
for tens of thousands of years, with uranium lasting more than $4\frac{1}{2}$
billion years.  Canon City and CTCF, sit next to a EPA Superfund
clean-up site with numerous toxins and enough radioactive debris
to last for thousands of years.  According to a newspaper article
in the Denver Post, dated June 15, 2012 Judge John McMullen has
set aside a radioactive materials license that the CDPHE issued to
allow construction of a new uranium mill southwestern Colorado.
Judge  McMullen states, "CDPHE acted contrary to law" in failing to
allow a proper adjudicatory public hearing.  Also, an advocate
against the construction of uranium milling operations Jennifer
Thurston states, "There's never been a uranium mill in Colorado
that has been operated and cleaned up without problems.  We have

## D. CAUSE OF ACTION

deep concerns about how CDPHE Regulates uranium mills in this
state".

44. Processing also leaches out heavy metal such as Chromium, Mer-
cury, Cadmium, Iron, Lead, Molybdenum, Colbalt, Nickel, Arsenic,
Vanadium, Selenium, Manganese, Zinc, and Copper; these become part
of the tailings, the chemicals used in the processing round out
the lake of hot toxic soup.  Included in the tailing impoundment
ponds, are Sulfuric Acid, Hydrochloric Acid, Nitric Acid, Kero-
sene, Ammonia, Caustic Soda and solvent such as trichloroethylene.
The fact that CDPHE have allowed these unsafe conditions to exist
violated the plaintiff's constitutional rights which shows cruel
and unusual punishment, and violated the I, IV, VIII, and XIV
Amendment to the United States Constitution.

2.   Claim Two:   **CONDITIONS OF CONFINEMENT/EIGHTH AMENDMENT VIOLATION**

Supporting Facts:

45. Alleged and upon information and belief the plaintiff states that:  CTCF, was started as the territorial prison in the 1860's with one small cell house and a hanging gallows pole.  The complex has grown to include a medical facility including a Clinic Services Facility and Infirmary.  With now a population of approximately 950 inmates, the complex is a collection of older "sick" buildings all have friable asbestos in various parts of the structures.  The auditorium which is above the kitchen and dining halls is uninhabitable, because of the high concentration of asbestos, and is closed.

46. Plaintiff was informed by Mexican National inmates that the CTCF's administration and maintenance staff had arranged a crew of Mexican National inmates to remove asbestos tiles from the auditoriums ceiling and other locations therein.  This area is above the kitchen and dining halls.  They worked on the abatement of the asbestos, under the cloak of darkness, or at night, to limit the general populations knowledge of this operation.  This unconscionable act that the staff were personally aware of, presents a substantial health risk to the plaintiff.  The staff knowingly acting with deliberate indifference, violates the plaintiff's Eighth Amendment rights.

47. Plaintiff work in the food services at CTCF, and recently they failed to meet Public Health Department standards.  The ventilation is inadequate throughout the kitchen and discharges friable

(Rev. 1/30/07)

## D. CAUSE OF ACTION

debris, dust and lint over the food preparation area. The kitchen
has not been updated since the early 1980's and much needed kitc-
hen equipment replacement is overdue, per the Captain over operat-
ions in the kitchen. Cockroaches and mice are abundant in the
kitchen and dining halls. Food is not maintained or served at the
proper temperature. These unsanitary conditions have a direct im-
pact on the health of the plaintiff. CTCF staff knowingly acting
with deliberate indifference, violates the plaintiff's Eighth
Amendment rights.

48. Plaintiff is exposed to carcinogenic fibers within the gymna-
sium daily. This building is a free standing metal structure.
The sloped metal roof ceiling is covered with a plastic laminated
fiberglass batt insulation. Over time the plastic covering has
been damaged and or deteriorated, and consist of holes and tears.
The ventilation system blows forced air directly across the dam-
aged fiberglass. The high volume air flow from the HVAC unit,
dislodges fine friable fiberglass particles and distributes them
through the air. These friable fiberglass particles are a well
known carcinogenic when inhaled. This condition exposes the
plaintiff to an unreasonable risk of serious harm and is in vio-
lation of the plaintiff's Eighth Amendment rights.

49. Plaintiff is forced to live in the same cell house, while
demolition and construction is being performed. The remodeling
of the bathrooms in Cell House One purpose is to install new

## D. CAUSE OF ACTION

bathroom fixtures and shower facilities. The contractors did not

provided for proper ventilation to draw concrete and construction

dust from within the construction area and pods which is causing

unknown bacterial, and mold spores to become airborne and spread

by the ventilation system throughout the cell house, resulting in

sinus infections. The plaintiff whom already has a breathing pro-

blem and is on 24/7 oxygen therapy. During the remodeling of the

bathrooms the construction dust continually activated the fire

alarms. Consequently, the staff turned off the fire alarm system,

leaving the occupants of Cell House One vulnerable. These condi-

tions expose the plaintiff to an unreasonable risk of serious harm

and the staff continues to ignore an obvious and serious danger.

These items violate the plaintiff's Eighth Amendment rights.

50. Plaintiff's additional problems exist with no clean running

water in the pods being remodeled. Drinking water comes from a

5-gallon construction type water cooler. This cooler is used by

all inmates in the pod, resulting in a very unsanitary method

of dispensing water. Residual water from the cooler spills and

sets under the cooler and has aggressively eroded the power-coat

enamel paint from the table top. The fact that the majority of

the staff at CTCF, do not drink from the water within the facility

but bring in bottle water and other drinks speaks to the know-

ledge of all of the health hazards. Prison officials acted with

deliberate indifference when they ignore an obvious and serious

## D. CAUSE OF ACTION

danger of the contaminates in the Canon City water.   This violates
the plaintiff's Eighth Amendment rights.

51. Plaintiff experienced on April 20, 2012 a raid and search per-
formed by CTCF's staff, under the pretense of a yearly facility
shakedown of Cell House One.   By doing this they singled out only
the plaintiff's pod, out of the entire facility.   As the plaintiff
was leaving the pod, staff was seen moving laptops, scanners and
other clerical equipment into the pod, in order to make copies of
paperwork and or legal documents.   This shakedown occurred just a
few days after the confiscation of the plaintiff's legal corres-
pondence from Special Master, the Honorable Judge Richard M.
Borchers.   This confiscation was another diversionary ploy orche-
strated to manipulate, by using deception of a facility shakedown
to gather information on the plaintiff's intent of litigation.
This document was requested to be returned and to date has been
refused.   This denied the plaintiff his I, IV, and V Amendment
rights by the staff performing this unreasonable search and sei-
zure of property including the confiscation of two of the plain-
tiff's exhibits, which were to be introduced to the court.

52. Plaintiff alleges that defendants Williams, Sullivan, Burns,
and Turner actions violated plaintiff's rights under the VIII
Amendment to the United States Constitution.   The staff threaten-
ed the plaintiff for exercising his rights to seek redress of
abuses for not allowing to obtain oxygen in a timely

### D. CAUSE OF ACTION

manner.  Defendant Williams, ordered plaintiff to be housed on
the third floor, necessitating the plaintiff to climb the stairs,
dragging an oxygen bottle up and down the stairs, causing plain-
tiffs lungs to burn with pain.  Defendant Burns, used his autho-
rity to send plaintiff back to the cell house without oxygen,
when plaintiff was dangerously out of oxygen, causing plaintiff's
blood oxygen level to drop below safe limits.  The defendants seem
to take great joy in stopping the plaintiff's movement when he
was out of oxygen.  Plaintiff alleged that Lt. Williams, Sgt.
Sullivan, Sgt. Turner, and C.O. Burns did willfully, wantonly and
with malicious intent singled out the plaintiff and retaliated
against the plaintiff by stopping him on numerous occasions from
obtaining oxygen in a timely manner during authorize movements.
Therefore, the defendants actions, violated the plaintiff's I,
and VIII Amendment rights.

3.  Claim Three:   **IRREPARABLE INJURY/FOURTEENTH AMENDMENT VIOLATION**

Supporting Facts:

53. Alleged and upon information and belief the plaintiff states that:  Plaintiff is showing symptoms of radiation and toxic chemical exposure.  Plaintiff's radiation exposure has resulted in early and delayed effects.  Early effects involve damage of rapidly dividing cells (i.e., the mucosa, skin, and bone marrow). Delayed effects include malignancy, reproduction abnormalities, liver, kidney, nervous system, and immune system dysfunction.

54. Injury to superficial structures; may cause, skin scarring, atrophy, telangiectasis, and xerostomia.  Radiation effects the eyes including cataracts, dry eye syndrome, and retinopathy. Plaintiff also shows injury to deep structure as outlined:

55. Hematopoietie system radiation exposure causes injury to the bone marrow that may vary from transient decreases to complete destruction of the blood elements.

56. Nervous system structures are sensitive to radiation.  The brain and spinal cord are much more sensitive than the peripheral to the acute and delayed effects of radiation.  Effects include neuropathy, myelopathy, and cerebral injury.

57. Cardiovasular system effects of ionizing radiation result in damage to the heart and coronary arteries.  Smaller vessels (the capillaries and arterioles) are more susceptible to damage than larger blood vessels.  Delayed effects from radiation include obliterative endarteritis, coronary artery disease, percarditis, which may occur months or years later.

(Rev. 1/30/07)

## D. CAUSE OF ACTION

58. <u>Pulmonary system</u> radiation with high repeated moderate dose of radiation may cause pneumonitis or pulmonary fibrosis, which is often delayed for weeks or months.

59. <u>Gastrointestinal system</u> radiation in mucositis and mucosal edema within hours or days after exposure.  Symptoms include odynophagig and weakness.  High doses of radiation inhibit gastric secretion and cause inflammation and ulceration of the bowels. Hepatitis, liver dysfunction and intestinal stenosis may occur as delayed effects.

60. <u>Urogenital system</u> radiation effects are dose-dependant, vary- ing transient decrease infertility to permanent sterility and chromosomal aberrations.  Nephritis and kidney dysfunction may occur as immediate or delayed effects.

61. <u>Endocrine system</u> organs are relatively resistant to low or moderate doses of radiation.  Delayed effects of exposure include thyroid dysfunction; this was learned from the short term and long term outcome of Chernobyl, Hiroshima and Nagasaki, radiation effects.

62. Plaintiff is ill from radiation exposure and carcinogenic chemicals and heavy metals and is showing signs of his illness as describe herein:

63. Plaintiff's blood test show an iron and vitamin $B_{12}$ deficiency which leads to a complex neurological syndorome and the plaintiff is experiencing difficulty with balance.  Plaintiff is receiving

## D. CAUSE OF ACTION

intermuscular injections every other week of 100 mg of vitamin $B_{12}$; this therapy is to continue for the remainder of the plaintiff's life.  This therapy is a result of a dysfunction of both the nervous, and immune system.  These system malfunction when enhanced by radioactive and toxic contaminates from the Cotter Mill, that are in the air and water at CTCF.

64. Plaintiff has developed spinal stenosis, a nervous system disorder and is showing signs of cervical spondylosis, results from chronic cervical disk degeneration causing tingling in hands and arms, which could lead to paralysis.  This condition is shown in recent X-rays and is documented in an Ambulatory Health Records.

65. Plaintiff has developed a cyst on his right kidney, and lives with extreme pain daily.  This cyst was detected in a recent CT scan.  Environmental exposure to heavy metals, such as lead and cadmium have caused collateral consequences with dysfunction kidneys.

66. Plaintiff alleged that he came from BVCF to CTCF, with a lung disease, caused from working on a clean-up crew during BVCF's remodeling project.  Plaintiff's acute and chronic pulmonary disease is also aggravated by inhalation of noxious substances (radon gas, asbestos fiber, fiberglass fibers, construction dust, black mold) encountered at CTCF.  Plaintiff who experienced radiation pneumonitis developed pulmonary fibrosis, which has reduced his lung volume.  There is no specific therapy that has proven effective,

### D. CAUSE OF ACTION

but the infirmary doctor Tiona, M.D., ordered plaintiff to receive
nebulizer treatments twice a day.  Also, the plaintiff's blood
oxygen level is maintain with 24/7 oxygen therapy.

67. Plaintiff suffers from a fungal infection and this is second-
ary, to a primary infection in another organ, frequently the
lungs.  The plaintiff medicates this affected area once daily with
a topical synthetic steroids used as anti-inflammatory, called
Triamcinnolone Acetonide cream.

68. Plaintiff has developed numerous hemangiomas, as a result of
liver damage, which was detected during an episodes of several
blood veins rupturing.  Protuberant blood veins have developed on
plaintiff's scrotum, stomach, and inside his outer ear canal of
both ears.

69. Plaintiff's recent blood test detected that serum Thyroid-
Stimulating Hormone (TSH) level is abnormal, and increasing his
symptoms of hyperthyroidism.

70. Plaintiff is experiencing a cyst on the back of his neck
directly over the area of his cervical vertebrae.

71. Plaintiff is experiencing macular degeneration, referred to
as atrophy, which is the wasting away of the muscle in the fore-
arms, resulting in loss of strength and use of right and left
arms, and showing visible muscle loss and wrinkling of the skin.

72. Plaintiff symptoms are rapidly involving into additional
neurological deficits.  This identifies plaintiff's need for a

## D. CAUSE OF ACTION

urgent evaluation for possible cauda equina tumor, epidural abscess or, disk herniation.  When a herniated disk, as shown in X-ray, impinges a nerve root pain is the most prominent symptom; numbness and weakness are common, and when present, are of the magnitude consistent with compression of a single nerve root.

73. Plaintiff was examined by CTCF's health care provider Bonnie Durran; she concluded by stating;  "A recent LSS spine X-ray obta-ined 3/9/12 revealed moderate degenerative disc disease in the lower lumber spine with associated facet arthropathy with apparent spinal canal narrowing; although evaluation was limited (per radio-logist) consider MRI of the spine for further evaluation".  In re-sponse CDOC'S, "PHP denied MRI, stating he needs to try physical therapy first and document trial and failure of meds".

74. Plaintiff is experiencing symptoms including nausea, vomiting, weakness, exhaustion, and lassitude; these symptoms are occurring in combination with dehydration, anemia, and infections.  The prog-nosis determine by the radiation dose, and frequency as well as by the underlying condition of the plaintiff, and this is leading up to central nervous system damage and widespread vascular injury also secondary infection.

## LEGAL CLAIMS

75. Plaintiff allegedly incorporate by referencing paragraphs 1-74.

76. The Cotter Corporation knowingly contaminated the water adjacent to the Cotter Mill and the Arkansas River with various toxic pollutants, as well allowed the uranium by-products to become airborne.

77. The authorities; Colorado Department of Public Health and environment, Canon City Water Treatment, Fremont County Government, Colorado Department of Corrections, and Colorado Territorial Correctional Facility, including all their various departments all failed to protect the plaintiff from various different hazards toxins. These unsafe conditions violated the plaintiff's constitutional rights demonstrates cruel and unusual punishment, and violated the plaintiff's I, IV, VIII, and XIV Amendment to the United States Constitution.

78. The plaintiff has no plain adequate or complete remedy at law to redress the wrong described herein. Plaintiff has been and will continue to be irreparably injured by the conduct of the defendants unless this court grants the declaratory and injunctive relief which plaintiff seeks.

## E. PREVIOUS LAWSUITS

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated? _X_ Yes ___ No (CHECK ONE). If your answer is "Yes," complete this section of the form. If you have filed more than one lawsuit in the past, use extra paper to provide the necessary information for each additional lawsuit. The information about additional lawsuits should be labeled "E. PREVIOUS LAWSUITS."

1. Name(s) of defendant(s) in prior lawsuit: Executive Director of CDOC and Warden of Buena Vista Correctional Facility.

2. Docket number and court name: 10CV117-District Court, Eleventh Judicial District Chaffee County, Colorado.

3. Claims raised in prior lawsuit: Innocent of both charges, possesion of dangerous contraband and damage to property.

4. Disposition of prior lawsuit (for example, is the prior lawsuit still pending? Was it dismissed?): The Court upheld BVCF's discipline hearings findings.

5. If the prior lawsuit was dismissed, when was it dismissed and why? Yes, without prejudice.

6. Result(s) of any appeal in the prior lawsuit: Court of Appeals, Case Number 2011CA1833, Notice of Dismissal for failure to prosecute.

## F. ADMINISTRATIVE RELIEF

1. Is there a formal grievance procedure at the institution in which you are confined?

   _X_ Yes ___ No (CHECK ONE).

2. Did you exhaust available administrative remedies? _X_ Yes ___ No (CHECK ONE).

(Rev. 1/30/07)

## G. REQUEST FOR RELIEF

State the relief you are requesting. If you need more space to complete this section, use extra paper. The additional requests for relief should be labeled "G. REQUEST FOR RELIEF."

WHEREFORE, plaintiff respectfully prays that this Court enter judgment granting plaintiff:

79. A declaratory judgment that the defendants acts, policies, and practices described herein violate plaintiff's rights and liberty interests under the I, IV, VIII and XIV Amendment of the United States Constitution.

80. A preliminary and permanent injunction which:

(a) Requires defendant John Hickenlooper to exercise his authority and order the immediate evacuation and closure of CTCF to protect plaintiff, and other inmates similarly situated from suffering extreme pain, injury or death, due to the dangerous

## DECLARATION UNDER PENALTY OF PERJURY

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Executed on _____July 31, 2012_____
(Date)

_____
(Prisoner's Original Signature)

Arnold A. Cary

(Rev. 1/30/07)

## G. REQUEST FOR RELIEF

living conditions that exist at CTCF and which provides the
unnecessary and wanton infliction of pain.

81. (b) Requires defendant Tom Clements to exercise his statu-
torily delegated authority and enforce defendant Hickenlooper's
order to evacuate and close CTCF due to the prisoner daily expo-
sure to numerous carcinogenic toxins in the air and water.  This
shall include enforcing CDOC's Administrative Regulations, pol-
icies, procedures, and rules pertaining to prisoners health and
treatment.

82. (c) Requires defendant Tom Clements to cease utilizing CDOC's
unwritten policies and procedures that deny proper medical treat-
ment and care to subject plaintiff, and other inmates similarly
situated to unnecessary pain and suffering due to a lack of treat-
ment.

83. (d) Requires defendant Tom Clements to protect plaintiff and
other inmates similarly situated from living in this dangerous
environment and any other facility, for which he should personally
be responsible and aware.  Defendant Clements as Director of CDOC
is responsible to confirm and act on findings of the CDPHE, EPA,
and other agencies whose reports show that the plaintiff's living
conditions are environmentally unsafe and unsanitary.  Clements
shall correct the living conditions and supply clean water.

84. (e) Require Rea Timme, Warden of CTCF to aid defendant Hick-
enlooper and Clements in evacuating the prisoner population from
CTCF.

## G. REQUEST FOR RELIEF

85. (f) Prohibit defendants, their agents, employees, successors in interest, and all other persons in active concert or particpation with them from performing acts of arrogance of power, such as; harassing, threatening, punishing, or retaliating in anyway against the plaintiff because he filed this action.

86. Plaintiff desires to have a qualified opinion from a conflict-free expert physician, with experience in disorders related to environmental toxins and radiation exposure.

87. Plaintiff also, seeks a jury trial on all issues triable by jury.

88. Compensatory damage in the amount of $500,000.00 against each defendant, jointly and severally.

89. Punitive damages in the amount of $1,000,000.00 against each defendant.

90. Plus all plaintiff's attorney fees, court cost, and interest.

91. Any additional further relief as the court may deem just and proper, and equitable.


July 31, 2012

*Arnold A. Cary*

Respectfully submitted,
Arnold A. Cary
CDOC No. 136835
CTCF/CH-1
P.O. Box 1010
Canon City, CO   81215-1010