**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

JAN 2 3 2013

JEFFREY P. COLWELL
CLERK

Civil Action No.   1:12-cv-02072-BNB

ARNOLD A. CARY_____,

V.

JOHN HICKENLOOPER,_____,
State of Colorado, Governor,

TOM CLEMENTS,_____,
CDOC, Executive Director,

REA TIMME,_____,
CTCF, Warden,

DAVID TESSIER,_____,
CTCF, Health Services Administrator,

SUSAN M. TIONA, M.D.,_____,
CTCF, Health Services Physician,

JOHN V. BUGLEWICZ, M.D.,_____,
CTCF, Health Services Physician,
and Fremont County Commissioner,

LINSEY FISH DePENA, M.D.,_____,
CTCF, Former Health Services
Physician,

MIKE STIEHL,_____,
Fremont County Commissioner,

ALANO MAYES,_____,
Canon City, City Attorney,

RODNEY ACHEN,_____,
CTCF, Captain Food Services,

RONALD WILLIAMS,_____,
CTCF, Lieutenant,

CHRISTINA TURNER,_____, Defendant(s)
CTCF, Sergeant,

-1-

ROBERT BURNS, _____ ,
CTCF, Correctional Officer,

DANIEL BRATINA, _____ ,
CTCF, Correctional Officer,

JOHN DOE #1, _____ ,
J-COR Mechanical, President,

JOHN DOE #2, _____ ,
Mountain Masonry, President,

JOHN DOE #3, _____ ,
BVCF, Warden,

RENA WOOD, _____ ,
BVCF, Sergeant,

GENA WOODS, _____ , Defendant(s),
BVCF, Sergeant,

---

## AMENDED PRISONER COMPLAINT PURSUANT TO 42 U.S.C. § 1983

---

**COMES NOW,** Arnold A. Cary, Plaintiff, Pro Se, herein, and res-
pectfully petitions this Honorable Court pursuant to their order
to amend previous Prisoner Complaint, seeking relief pursuant to
42 U.S.C. § 1983 for the unlawful imposition of condition of con-
finement while incarcerated by the Colorado Department of Correc-
tions, in violation of the prohibition set forth in the cruel and
unusual punishment clause of the 8th Amendment to the United
States Constitution and as it further set forth in the following:

-2-

## A. PARTIES

1. **Arnold A. Cary**, # 136835, Sterling Correctional Facility
   (Plaintiff's name, prisoner identification number, and complete mailing address)

   P.O. Box 6000 Sterling, Colorado 80751-6000

2. **John Hickenlooper**, Colorado State Governor, Colorado State
   (Name, title, and address of first defendant)

   Capital, 200 East Colfax Avenue, Denver, Colorado 80203
   At the time claim(s) alleged in this complaint arose, was this defendant acting under
   color of state law? _X_ Yes ___ No (CHECK ONE). Briefly explain your answer:

   Plaintiff's rights have been violated by this state official.

   Defendant was working for the state at the time of the acts.

3. **Tom Clements**, Executive Director, CDOC, 2862 South Circle
   (Name, title, and address of second defendant)

   Drive, Colorado Springs, Colorado 80906
   At the time claim(s) alleged in this complaint arose, was this defendant acting under
   color of state law? _X_ Yes ___ No (CHECK ONE). Briefly explain your answer:

   Plaintiff's rights have been violated by this state official.

   Defendant was working for the state at the time of the acts.

4. **Rea Timme**, CTCF Warden, CTCF, 275 West Highway 50, P.O. Box
   (Name, title, and address of third defendant)

   1010, Canon City, Colorado 81215-1010
   At the time claim(s) alleged in this complaint arose, was this defendant acting under
   color of state law? _X_ Yes ___ No (CHECK ONE). Briefly explain your answer:

   Plaintiff's rights have been violated by this state official.

   Defendant was working for the state at the time of the acts.

5. **David Tessier**, Health Services Administrator, CTCF, 275 West
   (Name, title, and address of fourth defendant)

   Highway 50, P.O. Box 1010, Canon City, Colorado 81215-1010
   At the time claim(s) alleged in this complaint arose, was this defendant acting under
   color of state law? _X_ Yes ___ No (CHECK ONE). Briefly explain your answer:

   Plaintiff's rights have been violated by this contract admin -

   istrator to provide treatment to the Plaintiff.

## A. PARTIES

6. **Susan Tiona, M.D.**, CTCF Physician, CTCF, 275 West Highway 50,
   (Name, title, and address of fifth defendant)

   P.O. Box 1010, Canon City, Colorado  81215-1010

   At the time claim(s) alleged in this complaint arose, was this defendant acting under color of state law? _X_ Yes ___ No (CHECK ONE). Briefly explain your answer:

   Plaintiff's rights have been violated by this contract Physi-

   cian failed to diagnose and treat toxic radiation exposure.

7. **John V. Buglewicz, M.D.**, CTCF Physician, and Fremont County
   (Name, title, and address of sixth defendant)

   Commissioner, CTCF, 275 West Highway 50, P.O. Box 1010,

   Canon City, Colorado  81215-1010

   At the time claim(s) alleged in this complaint arose, was this defendant acting under color of state law? _X_ Yes ___ No (CHECK ONE). Briefly explain your answer:

   Plaintiff's rights have been violated by this contract Physi-

   cian failed to diagnose and treat toxic radiation exposure.

8. **Linsey Fish DePena, M.D.**, Former CTCF Physician, DWCF, 10900
   (Name, title, and address of seventh defendant)

   Smith Road, P.O. Box 392005, Denver, Colorado  80239

   At the time claim(s) alleged in this complaint arose, was this defendant acting under color of state law? _X_ Yes ___ No (CHECK ONE). Briefly explain your answer:

   Plaintiff's rights have been violated by this contract Physi-

   cian failed to diagnose and treat toxic radiation exposure.

9. **Mike Stiehl, Fremont County Commissioner, Fremont County Gov-**
   (Name, title, and address of eighth defendant)

   ernment, 615 Macon Avenue, Canon City, Colorado  81215

   At the time claim(s) alleged in this complaint arose, was this defendant acting under color of state law? _X_ Yes ___ No (CHECK ONE). Briefly explain your answer:

   Plaintiff's rights have been violated by this county official.

   Defendant was working for the county at the time of the acts.

## A. PARTIES

10. **Alano Mayes,** City Attorney, Canon City, 128 Main Street,
    (Name, title, and address of ninth defendant)

    Canon City, Colorado  81212

    At the time claim(s) alleged in this complaint arose, was this defendant acting under color of state law?  X  Yes ___ No (CHECK ONE). Briefly explain your answer:

    Plaintiff's rights have been violated by this city official.

    Defendant was working as counsel for the City Water Depart-

    ment at the time of the acts.

11. **Rodney Achen,** CTCF Captain, CTCF, 275 West Highway 50, P.O.
    (Name, title, and address of tenth defendant)

    1010, Canon City, Colorado  81215-1010

    At the time claim(s) alleged in this complaint arose, was this defendant acting under color of state law?  X  Yes ___ No (CHECK ONE). Briefly explain your answer:

    Plaintiff's rights have been violated by this state official.

    Defendant was working for the state at the time of the acts.

12. **Ronald Williams,** CTCF Lieutenant, CTCF, 275 West Highway 50,
    (Name, title, and address of eleventh defendant)

    P.O. Box 1010, Canon City, Colorado  81215-1010

    At the time claim(s) alleged in this complaint arose, was this defendant acting under color of state law?  X  Yes ___ No (CHECK ONE). Briefly explain your answer:

    Plaintiff's rights have been violated by this state official.

    Defendant was working for the state at the time of the acts.

13. **Christina Turner,** CTCF Sergeant, CTCF, 275 West Highway 50,
    (Name, title, and address of twelfth defendant)

    P.O. Box 1010, Canon City, Colorado  81215-1010

    At the time claim(s) alleged in this complaint arose, was this defendant acting under color of state law?  X  Yes ___ No (CHECK ONE). Briefly explain your answer:

    Plaintiff's rights have been violated by this state official.

    Defendant was working for the state at the time of the acts.

## A. PARTIES

14. **Robert Burns**, CTCF Correctional Officer, CTCF, 275 West
(Name, title, and address of thirteenth defendant)

Highway 50, P.O. Box 1010, Canon City, Colorado   81215-1010

At the time claim(s) alleged in this complaint arose, was this defendant acting under color of state law? _X_ Yes ___ No (CHECK ONE). Briefly explain your answer:

Plaintiff's rights have been violated by this state official.

Defendant was working for the state at the time of the acts.


15. **Daniel Bratina**, CTCF Correctional Officer, CTCF, 275 West
(Name, title, and address of fourteenth defendant)

Highway 50, P.O. Box 1010, Canon City, Colorado   81215-1010

At the time claim(s) alleged in this complaint arose, was this defendant acting under color of state law? _X_ Yes ___ No (CHECK ONE). Briefly explain your answer:

Plaintiff's rights have been violated by this state official.

Defendant was working for the state at the time of the acts.


16. **John Doe #1**, President of J-COR Mechanical, 15800 West 5th
(Name, title, and address of fifteenth defendant)

Avenue, Golden, Colorado   80401

At the time claim(s) alleged in this complaint arose, was this defendant acting under color of state law? _X_ Yes ___ No (CHECK ONE). Briefly explain your answer:

Plaintiff's rights have been violated by this contract person

working on the prison remodeling and contaminated the air.


17. **John Doe #2**, President of Mountain Masonry, 1850 Lucas Street
(Name, title, and address of sixteenth defendant)

Canon City, Colorado   81212

At the time claim(s) alleged in this complaint arose, was this defendant acting under color of state law? _X_ Yes ___ No (CHECK ONE). Briefly explain your answer:

Plaintiff's rights have been violated by this contract person

working on the prison remodeling and contaminating the air.

## A. PARTIES

18. **John Doe #3,** BVCF Warden, BVCF, 15125 Highway 24 & 285, P.O.
    (Name, title, and address of seventh defendant)

    Box 2017, Buena Vista, Colorado  81211

    At the time claim(s) alleged in this complaint arose, was this defendant acting under color of state law? _X_ Yes ___ No (CHECK ONE). Briefly explain your answer:

    Plaintiff's rights have been violated by this state official.

    Defendant was working for the state at the time of the acts.

19. **Rena Wood, BVCF Sergeant, BVCF, 15125 Highway 24 & 285, P.O.**
    (Name, title, and address of eighteenth defendant)

    Box 2017, Buena Vista, Colorado  81211

    At the time claim(s) alleged in this complaint arose, was this defendant acting under color of state law? _X_ Yes ___ No (CHECK ONE). Briefly explain your answer:

    Plaintiff's rights have been violated by this state official.

    Defendant was working for the state at the time of the acts.

20. **Gena Woods,** BVCF Sergeant, BVCF, 15125 Highway 24 & 285, P.O.
    (Name, title, and address of nineteenth defendant)

    Box 2017, Buena Vista, Colorado  81211

    At the time claim(s) alleged in this complaint arose, was this defendant acting under color of state law? _X_ Yes ___ No (CHECK ONE). Briefly explain your answer:

    Plaintiff's rights have been violated by this state official.

    Defendant was working for the state at the time of the acts.

## B. JURISDICTION

1.  I assert jurisdiction over civil rights claims pursuant to:

    **X** 28 U.S.c. § 1343 and 42 U.S.C. § 1983 (state prisoners).

2.  Plaintiff's seeks declaratory relief pursuant to:

    **X** 28 U.S.C. § 2201 and 2202.

3.  Plaintiff's claims for injunctive relief are authorized by:

    **X** 28 U.S.C. § 2283 and 2284 and Rule 65 of the Federal Rules
    of Civil Procedure.

4.  The court has supplemental jurisdiction over Plaintiff's state
    law claims under:

    **X** 28 U.S.C. § 1367.

## C. NATURE OF THE CASE

1.  Alleged and upon information and belief that Plaintiff states
that:  This document is to explain and describe the current condi-
tion of confinement of the Plaintiff who is incarcerated at the
Colorado Territorial Correctional Facility (CTCF).  Plaintiff asks
the court's patience and indulgence in the review of the three
claims stated herein as they contain a large amount of historical
and technological information.  Plaintiff has made every effort to
condense the presentation of his complaint as much as possible.
However, in a case of this nature, a great deal of detailed infor-
mation is necessary for a clear understanding of the issues.

2.  The following information will describe hazardous conditions
of confinement that include exposure to toxic contamination by
such toxins as Uranium mill by-products, Trichloroethylene (TCE)

-8-

## C. NATURE OF THE CASE

($C_2HCI_3$), heavy metals, asbestos, black mold, bacteria, construction dust, and infestations of vermin.

3.   The Plaintiff's investigation revealed these toxins and their locations, and identified all influential parties as named in various governmental reports, newspaper articles, and television investigation commentary.   The information describes the violations of federal health safety, and environmental standards by various individuals, companies, and agencies.   These agencies and individuals have known of the existence of such toxic contamination for many years and have chosen not to act in a timely manner and consistently failed to act upon their own policies and regulations.   Instead they conspired together to cover up the magnitude of the facts of the matter.   Particularly disturbing is their knowing obfuscation of the fact that plumes of various toxins continue to spread throughout the Canon City area, including CTCF. It is unconscionable that none of the authorities, mentioned in this complaint, have not even attempted to give notice to the Plaintiff and did not protect his health, safety or environment, which raises to the level of deliberate indifference.

4.   Defendants include the CDOC and CTCF staff, the State of Colorado, and other of its employees, who knew that ever since the 1980tys (a period of over 30 years) that toxic contaminants from the Cotter Uranium Mill were infiltrating the ground and surface water and becoming airborne.   At that time the Cotter Mill site was declared a Superfund site by the EPA.

## D. CAUSE OF ACTION

**CLAIM ONE:** CRUEL AND UNUSUAL PUNISHMENT/8th AMENDMENT VIOLATION

SUPPORTING FACTS:

1. Alleged and upon information and belief the Plaintiff states that: The Plaintiff discovered that less than 8,000 feet from the CTCF walls lies the largest EPA Superfund Cleanup site in the United States. This toxicological nightmare is the former location of the Cold War era Cotter Uranium Mill. Cotter Corporation, and its parent company, General Atomics, were long time suppliers of uranium to the US Government and industry. The Cotter Mill, is located right outside Canon City, where they started refining ore in 1958 and continued operations until 2011. Cotter disposed of various types of toxic waste and by-products of the ore milling process into 11 unlined "containment" ponds for over 20 years until 1982. In that year the smaller ponds were replaced with two large lined impoundment ponds. Though this was an attempt to improve the situation, the new liners were improperly installed over an unprepared rocky surface which resulted in perforations in the liners.

2. The Cotter Mill is now being dismantled but rather than performing this work according to any sort of adequate decommissioning plan it was performed haphazardly without so much as a comprehensive environmental impact study, reclamation plan. Cotter is now filling the containment ponds with dismantled radioactive mill machinery, contaminated top soil, toxic chemicals, and mill tailings. Currently, the ponds contain 4.4 million cubic yards

## D. CAUSE OF ACTION

of radioactive, and chemically toxic materials.

3.   Ground water has been contaminated by the uncontrolled radio-active materials and industrial toxins from these leaking contain-ment ponds.  The ground water in the Canon City/CTCF area contain carcinogenic toxins at concentrations that far exceed all federal and state water quality standards.  The CDPHE conducted tests that demonstrated that these contaminates are transmitted over large distances through both water and air transmission vectors.  The contaminates were found to be at levels of 713 parts per billion (ppb) in February and 89 ppb in July of 2011 which represent the most recent data reported by the CDPHE.  The CDPHE stated that anything higher than 39 ppb is a health risk.  The contaminates not only flow below ground in the water table but also above gro-und as they seep into several tributaries of the Arkansas River.

4.   It is widely known from newspaper articles, published lawsuits and numerous public meetings that the unchecked toxic run-off from the mill and toxic waste have found their way into the Arkansas River which flows through Canon City.  In fact part of the Arkan-sas River is diverted into a canal that CTCF draws its grounds irrigation water.

5.   Defendant Alano Mayes, City Attorney, and Mike Stiehl, Frem-ont County Commissioner are aware through their affiliation with the Canon City Water Department of the serious health risks posed by the incomplete removal of toxic compounds and radioactive part-icles from the cities water supply and yet they make no effort to

-11-

### D. CAUSE OF ACTION

warn the prisoners at CTCF, including the Plaintiff, that their drinking water is contaminated with carcinogenic and is threatening to life and health.

6.  Radon gas emissions from the tailing impoundment ponds at the Cotter Mill site have recently increased dramatically due to the droughts water evaporation and the continued spread of radioactive elements in the water table.  Radon gas nuclides attach to dust particles causing the previously inert dust to become radioactive. Radon gas infiltrates the soil and is then scavenged and subsequently re-deposited each time the wind blows.  EPA spokeswoman Sonya Pennock reported, "[Radon] vapors can seep up through the soil and get into homes. Then you have not only a drinking [water] issue but an inhalation hazard."

7.  The Canon City Municipal Water Treatment Authority delivers to CTCF contaminated toxic water including the chemical Trichloroethylene which is known to cause damage to the liver, kidneys, nervous system, and circulatory system if ingested or inhaled.

8.  The Cotter Mill contamination of ground water with radioactive particles and industrial solvents was first identified by the EPA and the CDPHE several years ago.  However, the CDPHE acting director, Martha Rudloph, has declined to comment on any allegations concerning the Cotter Superfund Clean-up site.  This is, presumably, because the State of Colorado stands to bear the expense of the clean-up if the Cotter Corporation walks away from its responsibility to reclaim the site and rehabilitate the ground water

-12-

## D. CAUSE OF ACTION

flowing into the Arkansas River.  Cotter has threatened to do so on several occasions due to the facts that, as a practical matter, reclaiming the site and river is practically impossibility.

9.  In August 2011 a television report disclosed that alarm is growing over the radioactive and chemical contamination of the Arkansas River.  KKTV News Reporter Mecca Rayne reported that Colorado Springs decided to drop a water pipeline project that would have drawn water from the Pueblo Reservoir due to concerns about its toxcity.  The Pueblo Reservoir is fed by the Arkansas River and lies down stream from the Cotter Mill site.

10. Another CDPHE report dated June 28, 2011, and delivered to the director Chris Urbina, stated, "The cancer causing chemical Trichoroethylene was detected in the ground water at concentrations up to 360 times federal health limits."

11. In a newspaper article October 2011 Amory Quinn, of the Cotter Corporation, said, "Samples collected from wells north of the mill were analyzed at an outside lab...which...indicated levels of Trichloroethylene in concentrations...at 1800 ppd, 1200 ppb, [and] 490 ppb."  The EPA's published safe level of exposure to this carcinogenic solvent is "5 ppb".  EPA spokesperson Sonya Pennock reported, "plumes of toxins have been detected moving underground toward Canon City."

12. Russ Walker, professor of environmental science at Colorado Mesa University said, "In the summer of 2011, Cotter committed a irresponsible act of dumping an additional 90,000 gallons of solvent,

## D. CAUSE OF ACTION

radioactive mill materials, and contaminated debris into the ponds
inappropriately.  You don't need a Ph.D. to think that's not the
best thing if there are holes that are un-repaired and leak."

13.  Federal authorities eventually handed off cleanup management
to the Colorado State Health Department.  Governor Hickenlooper's
plan was to evaluate Cotter's cleanup before a reopening of the
mill.  Governor Hickenlooper, said, it would have to obtain a new
license, which would require a "very public process with a lot of
public input."

14.  Additionally, Hickenlooper said, he will dispatch his chief
of staff, Roxane White, to the Cotter Mill July of 2012 to evalu-
ate cleanup efforts at the site declared a Superfund environmental
disaster in 1984.  "This is very important to the people down
there," he said, "Im definitely looking at it, and Roxane is look-
ing at it, so we can understand it in some detail and assure our-
selves that there isn't risk to human health or the environment."

15.  All named Defendant's as listed in the "PARTIES" were know-
ledgeable of and have been extensively briefed about the toxicol-
ogical hazards that exist at CTCF.  Despite these facts they have
failed to do anything to protect the Plaintiff from harm caused
by the water and airborne radioactive contamination and cancer
producing industrial solvents contained in the mills containment
ponds.  Plaintiff confronted all named CTCF's doctors and correc-
tional officers about the toxins in the water and air.  When I
inquired they would avoid the subject and walk away.

-14-

## D. CAUSE OF ACTION

**CLAIM TWO**: <u>IRREPARABLE INJURY/8th AMENDMENT VIOLATION</u>

SUPPORTING FACTS:

1.   Alleged and upon information and belief the Plaintiff states that:  While incarcerated by the CDOC, and under the direction and control of the defendants, the Plaintiff has been denied appropriate medical care for both health problems that have developed as a result of his exposure to water and airborne toxicological hazards, as alleged in Claim One, as well as other medical problems that possibly have independently arisen during the course of the Plaintiff's incarceration over the last six years.

2.   The Plaintiff has sought care for his conditions for the past 18 months and exhausted all administrative remedies available to him to secure such care but CTCF's Administrator David Tessier, and doctors Susan Tiona, John Buglewicz, and Linsey Fish DePena, continue to be indifferent to his serious medical needs.  Plaintiff is being denied appropriate medical care in the treatment of conditions that the CDOC itself created and, thereby, has turned what were treatable conditions into what are now likely terminal.

3.   Plaintiff is showing symptoms of radiation and toxic chemical exposure.  His radiation exposure has resulted in delayed effects now in evidence.  Delayed effects have resulted in liver, kidney, lung, and immune system dysfunction.  Plaintiff is showing signs of injury to the following systems: Hematopietic, Nervous, Cardiovascular, Pulmonary, Gastrointestinal, Urogenital, and Endocrine System.

-15-

### D. CAUSE OF ACTION

4.  Plaintiff is ill from low dose radiation, carcinogenic chem-
ical, and heavy metal exposure and is demonstrating the following
symptoms:

a. Plaintiff's blood tests demonstrates an iron and vitamin $B_{12}$
deficiency which leads to a complex neurological syndrome result-
ing difficulty with balance.  Plaintiff is receiving intramuscular
injections of $100_{mg}$ of vitamin $B_{12}$ every other week.  Plaintiff
has been informed by medical personal that these injections will
have to be continued for the rest of his life.

b. Plaintiff has developed lumbar spinal stenosis, a nervous
disorder, and is showing signs of cervical spondylosis, which
stems from chronic cervical disk degeneration.  This causes ting-
ling in the hands and arms due to nerve root compression caused
by lateral herniation of the disk intruding on the nerve roots.
A MRI was ordered March 3, 2012 by a physician at Saint Thomas
More Hospital but, was denied by CDOC Colorado Springs and sustain
by CTCF Health Services Administrator David Tessier.

c. September 25, 2012 Plaintiff became ill, gushing massive
amounts of blood from his rectum, which manifested into an acute
lower gastrointestinal blood loss from his colon and was hospita-
lized in intensive care unit at Saint Thomas More Hospital.  A
diagnostic colonoscopy test imaging was performed, resulting in
the Plaintiff receiving a blood transfusion.

d. Plaintiff experienced additional gastrointestinal problems
November 20, 2012. Plaintiff again was admitted into the emergency

-16-

## D. CAUSE OF ACTION

room at Saint Thomas More Hospital, Canon City, with an acute ab-
dominal pain in his epigastrium.  A CT scan and ultrasound indic-
ated the presence of gallstones.  The gallbladder was removed, and
unexpected complications resulted, and the Plaintiff was transfer-
red to Saint Mary Corwin Hospital in Pueblo, where additional gall-
stones were removed from his bile duct.

 e.  Plaintiff has developed a kidney cyst and recently disch-
arging blood in his urine and lives with extreme, daily abdominal
pain.  This cyst is documented in a CT scan.  Environmental expo-
sure to heavy metals, are consequence consistent with Plaintiff's
symptoms and lead to kidney dysfunction.

 f.  Plaintiff suffers from a chronic fungal infection of the
skin secondary to a primary infection in his lungs.  He must med-
icate the area with anti-inflammatory steroidal preparation.

 g.  Plaintiff has developed numerous hemangiomas secondary to
liver damage.  This became apparent when several blood veins rup-
turned.  Protuberant blood veins have developed on Plaintiff's
scrotum, stomach, and inside the outer ear canal of both ears.

 h.  Plaintiff's recent blood test reveled that Thyroid-Stimul-
ant-Hormone (TSM) level is abnormal resulting in an increase of
his hyperthyroidism.

 i.  A cyst has developed on the back of Plaintiff's neck dir-
ectly over the area of his herniated cervical disk.

 j.  Plaintiff is experiencing muscular degeneration (atrophy)
of his forearm muscles.  This degeneration, decline, or wasting

### D. CAUSE OF ACTION

away of the muscles and organs results from nerve damage and is a direct result of radiation exposure according to Jacqueline A. Nemer, M.D., an expert in environmental hazards.

k.  Plaintiff was previously incarcerated at Buena Vista Correctional Facility where he was forced to work under John Doe #3, Warden, Sgt, Rena Wood, and Sgt. Gena Woods for two weeks on a extensive remodeling project the state undertook at the facility. While engaged he was exposed to airborne friable asbestos.  Plaintiff developed pneumonia, which damaged his lungs, resulting in a diagnosis of pulmonary fibrosis.  His acute and chronic condition is aggravated by the inhalation of toxic substances such as radon gas, asbestos, fiberglass fibers, concrete dust, and black mold. All of these are encountered in Plaintiff's living situation in Cell House One of CTCF.  His symptoms resulted in him being in need of 24/7 oxygen therapy.  He must also receive daily nebulizer treatments.  Both will have to be continued for the rest of his life.

l.  Plaintiff is experiencing symptoms including nausea, vomiting, weakness, exhaustion, and lassitude.  These symptoms are occurring in combination with dehydration, anemia, and opportunistic infections.  The Plaintiff's prognosis is grim.  His underlaying condition, further potentiated by environmental radiation exposure, asbestos exposure, and other assaults on his resiratory system, are leading to a general collapse of his respiratory system.

-18-

## D. CAUSE OF ACTION

5.   As stated above, Plaintiff is dependent on bottled oxygen which he must use at all times.  Since he is only allowed to have one bottle of oxygen in his possession at a time, when his oxygen is low he has a standing written permission to make his way to the clinic during scheduled movements to retrieve a new cylinder whenever one is needed.  Plaintiff was repeatedly denied bottle oxygen in a timely manner on numerous occasions by Lt. Williams, Sgt. Turner, and C.O. Burns.  These denials of oxygen occurred on a daily bases stating in December of 2011 until the Plaintiff became ill September 25, 2012.

6.   These CTCF staff members were operating under the direction of Warden Rea Timme, and conspiring to harass the Plaintiff for the purpose of intimidating him into ending his legal activities.

7.   Lt, Williams abused his power by ordering Plaintiff to be housed on the second floor necessitating his having to climb four flights of steps carring s heavy, dolly mounted, oxygen bottle up and down the stairs.

8.   C.O. Burns abused his power by ordering the Plaintiff to return to the cell house when he was out of oxygen and was attempting to obtain a replacement cylinder.  This caused his blood oxygen level to drop below safe levels.  The C.O.'s action were reported to medical, Don Smith, R.N., who called the cell house and ordered the staff to stop their actions against the Plaintiff but, staff continued the denial of oxygen.

-19-

## D. CAUSE OF ACTION

**CLAIM THREE:** <u>CONDITIONS OF CONFINEMENT/8th AMENDMENT VIOLATION</u>

SUPPORTING FACTS:

1.  Alleged an upon information and belief the Plaintiff states that:  The Plaintiff is forced to live in unsafe, functionally obsolete, prison facilities loaded with friable asbestos and oth<u>--</u>. er toxicological hazards that this very court ordered closed over 30 years ago labeling it "beyond rehabilitation".  Though the facility was closed for a period it was subsequently reopened as a medium custody level facility and has so remained ever since. Though some facilities improvements have been undertaken, many of the complaints of deficiencies, that led this court to condemn the facilities in 1979, still remain or are even more at issue today than they were 30 years ago, forcing the Plaintiff to live in a antiquated facility that puts his health at risk.

2.  Colorado Territorial Correctional Facility was constructed in the 1860tys and originally consisted of one small cell house and a hanging gallows.  Over the past 150 years the complex has grown to include four cell houses, a medical facility, infirmary, a large kitchen/dining room building, various other support buildings as well as recreational and administrative buildings.  About twenty years ago two of the cell houses were gutted and new free standing interiors installed in the old, historically significant shells. More recently these cell houses, which were originally designed to house about 200 prisoners in single occupancy cells, had additio- nal bunks installed in each cell doubling their capacity.  In so

-20-

## D. CAUSE OF ACTION

doing the cell size was not changed so rather than one person in
a 6'x12' cell now there are two.  The cells are so cramped they
can only be fitted with one desk, they are simply too small.

3.  When the second bunks were added to every cell apparently no
one though of the consequences of a doubling of the cell house's
occupancy on the existing bathroom facilities which remained un-
changed.  Finally, in 2011, a bathroom enlargement and moderniza-
tion project was launched.  But while the bathrooms were being re-
modeled half of the facilities were taken out of service leaving
200 inmates to share two urinals, three toilets, and five showers.
This situation has persisted for nearly a year.  When the long
awaited improved facilities were made operational they only moder-
ately increased in size.  In March of 2012 the Director of CDOC,
Tom Clements visited the bathroom renovation.  The Plaintiff, asked
Tom Clements about the water and air contamination.  Tom Clements
avoided the question, and started speaking with another inmate.

4.  The entire CTCF facility is heavily contaminated with friable
asbestos fiber which are not only used as an insulation material
but also imbedded in the concrete and other building materials as
a strengthening agent.  Whenever remodeling and repair activities
are performed, friable asbestos is ejected into the air space and
no abatement protocol of any kind is followed to minimize the im-
pact on the Plaintiff's health.  C.O. Daniel Bratina, supervised
the demolition performed by Mexican National inmates without pro-
tective clothing and masks.

-21-

## D. CAUSE OF ACTION

5.  Defendant C.O. Daniel Bratina, supervised Defendants John Doe #1, of J-COR Mechanical and John Doe #2, of Mountain Masonry throughout the duration of the entire remodel.  They did not provide any air filter system, allowing the living units to fill with a cloud of dust on a daily basis.  This project lasted for almost one year.

6.  A theater facility exists above the kitchen and two dining halls which is not used due to the high levels of friable asbestos raining down from the ceiling in that space.  These make their way into the HVAC return air plenums and get circulated to the inhabited areas of the building.

7.  The CTCF employed Mexican National prisoners to work in this space removing ceiling tiles, and other asbestos bearing materials, during the nighttime hours.  The thinking by Warden Timme, apparently, was they could be more easily exploited into performing this hazardous task than could U.S. citizens.  By the time they develop symptoms of Mesothelioma they will have likely served their sentence and been deported back to Mexico.  No breathing apparatus was provided these prisoner laborers.  The administration had them work nights to limit the general population's knowledge of this operation.

8.  No effort was made to abate airborne friable asbestos dust from infiltrating areas where Plaintiff is forced to spend large amounts of time as a flatware wrapper in one of the dining halls. The airborne asbestos fibers also infiltrate the kitchen area and

## D. CAUSE OF ACTION

are blown from the overhead vents into the food preparation area.
9.  The Plaintiff is forced to work in CTCF's food services prog-
ram and recently the facility failed to meet Public Health Depart-
ment standards.  The ventilation system was found to be inadequ-
ate throughout the kitchen which discharges friable debris, dust,
and lint over the food preparation area.  The kitchen has not been
updated since the early 1980tys and kitchen equipment replacement
is long overdue according to Captain Achen who oversees kitchen
operations.

10. Defendant Captain Rodney Achen, is aware that cockroaches and
mice are abundant in the kitchen and dining halls.  Food is not
maintained or served at the proper temperature, again, due to ant-
iquated equipment therein.  Leftover baked goods are stored in the
office storeroom, where mice droppings cover this food, of which
Captain Achen ordered the Plaintiff to plastic wrap this food in
that it could be used as road snacks for the inmates.  These un-
sanitary conditions have a direct impact on the health of all pri-
soners including the Plaintiff.

11. Defendant Captain Rodney Achen keeps a $2\frac{1}{2}$ gallon water dispen-
ser on his deck of outside clean drinking water for his personal
usage, and has commented that he will not drink CTCF's water.

12. The Plaintiff's health and safety has been negatively affected
by being forced to live in this toxic, "sick" facility.

## E. PREVIOUS LAWSUITS

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated ? **X** Yes ___ No (CHECK ONE).  If your answer is "Yes," complete this section of the form.  If you have filed more than one lawsuit in the past, use extra paper to provide the necessary information for each additional lawsuit.  The information about additional lawsuits should be labeled.  " E. PREVIOUS LAWSUITS."

1. Name(s) of defendant(s) in prior
   lawsuit:

   Executive Director of CDOC and

   Warden at Buena Vista Correctional Facility.

2. Docket number and court name:

   10CV117 District Court, Eleventh

   Judicial District Chaffee County, Colorado.

3. Claims raised in prior lawsuit:

   Innocent of both charges, posses-

   ion of dangerous contraband and damage to property.

4. Disposition of prior lawsuit (for
   example, is the prior lawsuit still
   pending? Was it dismissed?):

   The Court upheld BVCF's discipline

   hearings findings.

5. If the prior lawsuit was dismissed,
   when was it dismissed and why?

   Yes, without prejudice.

6. Result(s) of any appeal in the prior
   lawsuit:

   Court of Appeals, Case Number

   2011CA1833, Notice of Dismissal for failure to prosecute.

## F. ADMINISTRATIVE RELIEF

1. Is there a formal grievance procedure at the institution in which you are confined?

   **X** Yes ___ (CHECK ONE). There is a step one, two and three grievance.

2. Did you exhaust available administrative remedies? **X** Yes ___ No (CHECK ONE).

All three grievances were submitted, and have received them back.

## G. REQUEST FOR RELIEF

State the relief you are requesting,  If you need more space to complete this section, use extra paper.  The additional requests for relief should be labeled " G. REQUEST FOR RELIEF."

WHEREFORE, Plaintiff respectfully prays that this court enter judgment granting Plaintiff the following:

1.  A declaratory judgment that the defendants acts, policies, and practices describes herein violate Plaintiff's rights and liberty interests under the 8th Amendment of the United States Constitution.

2.  A preliminary and permanent injunction which:

(a)  Requires Defendant John Hickenlooper to exercise his authority and order the immediate evacuation and closure of CTCF to protect Plaintiff, from suffering extreme pain, injury or death, due to the dangerous living conditions that exist at CTCF.

(b)  Requires Defendant Tom Clements to exercise his statutorily delegated authority and enforce Defendant Hickenlooper's order to evacuate and close CTCF due to the Plaintiff's daily exposure include enforcing CDOC's Administrative Regulations, policies, procedures, and rules pertaining to health and treatment.

(c)  Requires Defendant Ton Clements to cease utilizing CDOC's unwritten policies and procedures that deny proper medical treatment and care to Plaintiff.

(d)  Requires Defendant Tom Clements to protect Plaintiff from living in any other dangerous environment, for which he should personally be responsible and aware.  Defendant Clements as Director of CDOC is responsible to confirm and act on findings of the

## G. REQUEST FOR RELIEF

CDPHE, EPA, and other agencies whose reports show that the Plaintiff's living conditions are environmentally unsafe and unsanitary.  Clements shall correct the living conditions and supply clean water.

    (e)  Require Rea Timme, Warden of CTCF to aid Defendant Hickenlooper and Clements in evacuating the prisoner population from CTCF.

    (f)  Prohibit Defendants, their agents, employees, successors in interest, and all other persons in active concert or particpation with them from performing acts of arrogance of power, such as; harassing, threatening, punishing, or retaliating in anyway against the Plaintiff because he filed this action.

3.  Plaintiff desires to have a qualified opinion from a conflict-free expert physician, with experience in disorders related to environmental toxins and radiation exposure.

4.  Plaintiff also, seeks a jury trial on all issues triable by jury.

5.  Compensatory damage in the amount of $500,000.00 against each Defendant, jointly and severally.

6.  Punitive damages in the amount of $1,000.000.00 against each Defendant.

7.  Plus all Plaintiff's attorney fees, court cost, and interest.

8.  Any additional further relief as the court may deem just and proper, and equitable.

## DECLARATION UNDER PENALTY OF PERJURY

I declare under penalty of perjury that I am the Plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct.  See 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Executed on <u>January 18, 2012</u>
              (Date)

<u>Arnold A. Cary</u>
(Prisoner's Original Signature)