IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-02072-RM-KLM

ARNOLD A. CARY,

      Plaintiff,

v.

DAVIS TESSIER, CTCF Health Services Administrator,
SUSAN M. TIONA, M.D., CTCF, Health Services Physician and Fremont County Commissioner,
JOHN V. BUGLEWICZ, M.D., CTCF, Health Services Physician and Fremont County Commissioner,
LINSEY FISH DEPENA, M.D., CTCF, former Health Services Physician,
RODNEY ACHEN, CTCF, Food Services Captain,
RONALD WILLIAMS, CTCF, Lieutenant,
CHRISTINA TURNER, CTCF Sergeant, and
ROBERT BURNS, CTCF, Correctional Officer,

      Defendant.
_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on the **Partial Motion to Dismiss Second Amended Complaint (Doc. #21)** [#38][1] (the "Motion"), filed by Defendants David Tessier ("Tessier"), Susan M. Tiona, M.D. ("Tiona"), John Buglewicz, M.D. ("Buglewicz"), Rodney Achen ("Achen"), Henry Williams ("Williams"), Christine Turner ("Turner"), and Robert Berns

_____

[1]   "[#38]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF).  This convention is used throughout the Recommendation.

("Berns").[2]  Plaintiff, who is proceeding pro se,[3] filed a Response [#42] in opposition to the

Motion.  Defendants did not file a Reply.  The Motion is thus ripe for review.  Pursuant to

28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1(c)(3), the Motion is referred to this Court

for recommendation [#39].  Having reviewed the entire case file and being sufficiently

advised, the Court **RECOMMENDS** that the Motion [#38] be **GRANTED in part and**

**DENIED in part**, as follows.

## I.  Summary of the Case

Plaintiff is presently incarcerated at Sterling Correctional Facility, but throughout the

period relevant to this lawsuit, he was incarcerated at Colorado Territorial Correctional

Facility ("CTCF").  *Second Am. Compl.* [#21] at 8.  In short, Plaintiff asserts multiple

violations of the cruel and unusual punishment clause of the Eighth Amendment based on

the conditions of his confinement, the alleged effects on his health, and Defendants'

responses to his medical needs.[4]  *Id.* at 2.  The alleged hazardous conditions of which he

complains include "exposure to toxic contamination by such toxins as Uranium mill by-

products, Trichloroethylene (TCE) ($C_2HCl_3$), heavy metals, asbestos, black mold, bacteria,

---

[2]  The Court uses the spellings of Defendants' names as provided by Defendants in the Motion [#38].

[3]  The Court must construe liberally the filings of a pro se litigant.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out [the pro se litigant's] complaint or construct a legal theory on [his] behalf."  *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110).  In addition, pro se litigants must follow the same procedural rules that govern other litigants.  *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

[4]  On March 21, 2013, Plaintiff's first claim for relief and large portions of his third claim for relief were dismissed by Senior Judge Lewis T. Babcock for failure to state an arguable Eighth Amendment violation.  Thus, only the second claim and part of the third claim for relief in Plaintiff's Second Amended Complaint remain.

construction dust, and infestations of vermin." *Id.* at 8-9.  The following allegations of the Second Amended Complaint are accepted as true for purpose of determining the Motion.

Regarding Claim 2, Plaintiff asserts that while incarcerated with Colorado Department of Corrections ("CDOC") at CTCF, and while under the direction and control of Defendants, he was denied appropriate medical care for both health problems that developed as a result of his exposure to water and airborne toxicological hazards, as originally alleged in his now-dismissed first claim for relief, as well as other medical problems that independently arose during the course of Plaintiff's incarceration in the six years prior to instigation of this lawsuit. *Id.* at 15.  Plaintiff states that he has sought care for his conditions for the past eighteen months and exhausted all adminstraitive remedies available to him to secure medical care by CTCF's Administrator Defendant Tessier and by CTCF physicians Defendants Tiona and Buglewicz, who allegedly continue to be indifferent to his medical needs.  *Id.*  Plaintiff avers that he is being denied appropriate medical care in the treatment of conditions that CDOC itself created and, thereby, these Defendants have turned what were treatable conditions into what are allegedly likely terminal ones.  *Id.*  Plaintiff asserts that he is showing symptoms of radiation and toxic chemical exposure and that his radiation exposure has resulted in "delayed effects now in evidence." *Id.*  These delayed effects have allegedly resulted in liver, kidney, lung, and immune system dysfunction, and Plaintiff states that he is showing signs of injury to the following systems: hematopoietic, nervous, cardiovascular, pulmonary, gastrointestinal, urogenital, and endocrine.  *Id.*

Plaintiff asserts that he is ill from low dose radiation, carcinogenic chemical, and heavy metal exposure and that he is demonstrating the following symptoms and ailments.

*Id.* at 16.  First, he states that his blood tests demonstrate an iron and vitamin $B_{12}$ deficiency which causes a "complex neurological syndrome" resulting in difficulty with balance.  *Id.*  Plaintiff receives intramuscular injections of 100 mg of vitamin $B_{12}$ every other week for this issue and was informed by medical personal that these injections will have to be continued for the rest of his life.  *Id.*

Second, Plaintiff states that he has developed lumbar spinal stenosis, a nervous disorder, and that he is showing signs of cervical spondylosis, which stems from chronic cervical disk degeneration.  *Id.*  He asserts that this causes tingling in his hands and arms due to nerve root compression caused by lateral herniation of the disk intruding on the nerve roots.  *Id.*  A physician at Saint Thomas More Hospital ordered an MRI for this issue on March 3, 2012, but the MRI was later denied by "CDOC Colorado Springs," which decision was sustained by the CTCF Health Services Administrator, Defendant Tessier. *Id.*

Third, on September 25, 2012, Plaintiff became ill, "gushing massive amounts of blood from his rectum," which manifested into an acute lower gastrointestinal blood loss from his colon.  *Id.*  As a result, Plaintiff was hospitalized in the intensive care unit at Saint Thomas More Hospital.  *Id.*  A diagnostic colonoscopy imaging test was performed, and Plaintiff received a blood transfusion.  *Id.*

Fourth, on November 20, 2012, Plaintiff experienced additional gastrointestinal problems.  *Id.*  He was admitted to the emergency room at Saint Thomas More Hospital with acute abdominal pain in his epigastrium.  *Id.* at 16-17.  A CT scan and ultrasound indicated the presence of gallstones.  *Id.* at 17.  Plaintiff's gallbladder was removed, but unexpected complications arose, resulting in Plaintiff's transfer to Saint Mary Corwin

Hospital in Pueblo, where additional gallstones were removed from his bile duct.  *Id.*

Fifth, Plaintiff states that he has developed a kidney cyst and recently began discharging blood in his urine.  *Id.*  He states that this causes "extreme, daily abdominal pain."  *Id.*  He alleges that the cyst is documented in a CT scan.  *Id.*  Plaintiff blames "[e]nvironmental exposure to heavy metals" for his symptoms and kidney dysfunction.  *Id.*

Sixth, Plaintiff suffers from a chronic fungal infection of the skin secondary to a primary infection in his lungs.  *Id.*  He states that he must medicate the area with anti-inflammatory steroidal preparation.  *Id.*

Seventh, Plaintiff asserts that he has developed numerous hemangiomas secondary to liver damage.  *Id.*  He states that this became apparent when "several blood veins ruptured."  *Id.*  He also alleges that "[p]rotuberant blood veins have developed on Plaintiff's scrotum, stomach, and inside the outer ear canal of both ears."  *Id.*

Eighth, Plaintiff avers that a recent blood test revealed that his Thyroid-Stimulant-Hormone (TSM) level is abnormal, thus resulting in an increase of his hyperthyroidism.  *Id.*

Ninth, Plaintiff asserts that a cyst has developed on the back of his neck, directly over the area of his herniated cervical disk.  *Id.*

Tenth, Plaintiff states that he is experiencing muscular degeneration (atrophy) of his forearm muscles.  *Id.*  This "degeneration, decline, or wasting away of the muscles and organs results from nerve damage" and is allegedly a direct result of radiation exposure according to Jacqueline A. Nemer, M.D., whom Plaintiff states is an expert in environmental hazards.  *Id.* at 17-18.

Eleventh, Plaintiff was previously incarcerated at Buena Vista Correctional Facility where he was forced to work for two weeks on an extensive remodeling project that the

State of Colorado undertook at the facility. *Id.* at 18. While engaged in this work, he was allegedly exposed to airborne friable asbestos. *Id.* Plaintiff developed pneumonia, which damaged his lungs, resulting in a diagnosis of pulmonary fibrosis. His acute and chronic condition is aggravated by the inhalation of toxic substances such as radon gas, asbestos, fiberglass fibers, concrete dust, and black mold. *Id.* Plaintiff asserts that all of these toxic substances were encountered in Plaintiff's living situation in Cell House One of CTCF. *Id.* These symptoms resulted in his obtaining round-the-clock oxygen therapy. *Id.* He also receives daily nebulizer treatments. *Id.* He states that both of these treatments will have to be continued for the rest of his life. *Id.*

Finally, Plaintiff asserts that he is also experiencing symptoms such as nausea, vomiting, weakness, exhaustion, and lassitude. *Id.* These symptoms occur in combination with "dehydration, anemia, and opportunistic injections." *Id.* Plaintiff states that his "prognosis is grim." *Id.* "His [underlying] condition, further potentiated by environmental radiation exposure, asbestos exposure, and other assaults on his respiratory system, are leading to a general collapse of his respiratory system." *Id.*

Plaintiff is dependent on bottled oxygen which he must use at all times. *Id.* at 19. He is only permitted one bottle of oxygen in his possession at any given time, so when his oxygen is low he has standing written permission to go to the clinic during scheduled movements to retrieve a new cylinder. *Id.* Plaintiff states that he was repeatedly denied bottled oxygen in a timely manner on numerous occasions by Defendants Williams, Turner, and Burns. *Id.* Plaintiff states that these denials of oxygen occurred on a daily basis starting in December of 2011 until Plaintiff became ill on September 25, 2012. *Id.* Plaintiff states that these Defendants conspired to harass Plaintiff to intimidate him into ending his

legal activities.[5]  *Id.*

Plaintiff specifically refers to two instances in which he was allegedly denied oxygen. First, Plaintiff states that Defendant Williams "abused his power" by ordering Plaintiff to be housed on the second floor, thus necessitating his having to climb four flights of steps "carrying a heavy dolly[-]mounted oxygen bottle up and down the stairs."  *Id.*  Second, Plaintiff states that Defendant Burns "abused his power" by ordering Plaintiff to return to the cell house when he was out of oxygen and attempting to obtain a replacement cylinder. *Id.*  Plaintiff states that this "caused his blood oxygen level to drop below safe levels."  *Id.* Plaintiff states that Defendant Burns' action was reported to Don Smith, R.N., in the medical unit, who called the cell house and ordered the staff to stop their actions against Plaintiff.  *Id.*  Plaintiff states that, despite this call, "staff continued the denial of oxygen." *Id.*

Regarding his third claim,[6] Plaintiff asserts that he is forced to work in CTCF's food services program and recently the facility failed to meet Public Health Department standards.  *Id.* at 23.  Plaintiff states that the ventilation system was found to be inadequate throughout the kitchen because it discharges friable debris, such as asbestos, dust, and lint, over the food preparation area.  *Id.*  Plaintiff states that the kitchen has not been updated since the early 1980s and that Defendant Achen, who oversees kitchen operations, has stated that kitchen equipment replacement is long overdue.  *Id.*  Plaintiff also states that Defendant Achen is aware that cockroaches and mice are abundant in the

---

[5]  The present lawsuit was filed on August 6, 2012.

[6]   The Court does not repeat allegations relating to portions of this claim that have already been dismissed by Senior Judge Lewis T. Babcock.  *See Order* [#22] at 7-9.

kitchen and dining halls. *Id.* Food is not maintained or served at the proper temperature allegedly due to the antiquated equipment. *Id.* Leftover baked goods are stored in the office storeroom, where mice droppings cover this food. *Id.* Defendant Achen on at least one occasion ordered the Plaintiff to wrap this food in plastic so that it could be used as road snacks for the inmates. *Id.* These unsanitary conditions have had a direct impact on the health of all prisoners including Plaintiff. *Id.* Finally, Plaintiff avers that Defendant Achen keeps a 2.5 gallon dispenser of outside clean drinking water on his desk for his personal usage, and that Defendant Achen has commented that he will not drink CTCF's water. *Id.* Plaintiff states that his health and safety have been "negatively affected by being forced to live in this toxic, 'sick' facility." *Id.*

Two claims remain in this lawsuit, both brought under the Eighth Amendment. Claim Two is brought against Defendants Tiona, Buglewicz, Tessier, Williams, Turner, and Burns. Claim Three is brought against Defendant Achen. All other Defendants named in Claim Two and Three were dismissed by Judge Babcock on March 21, 2013. *Order* [#22] at 6.

Plaintiff seeks the following relief: (1) a declaratory judgment that Defendants' acts, policies, and practices violate Plaintiff's rights and liberty interests under the Eighth Amendment; (2) various forms of injunctive relief, including forcing Defendants to provide him with "a qualified opinion from a conflict-free expert physician, with experience in disorders related to environmental toxins and radiation exposure;" (3) $500,000 in compensatory damages from each Defendant; and (4) $1,000,000.00 in punitive damages from each Defendant. *Id.* at 25-26.

In the Motion, the CDOC Defendants seek dismissal of all of Plaintiff's claims except: (1) the portion of Claim Three against Defendant Achen regarding food sanitation, and (2)

the portion of Claim Two against Defendant Linsey Fish DePena, who has not been served in this lawsuit. *Motion* [#38] at 1, 12.

## II.  Standard of Review

### A.     Fed. R. Civ. P. 12(b)(1)

The purpose of a motion to dismiss pursuant to Rule 12(b)(1) is to test whether the Court has jurisdiction to properly hear the case before it.  Because "federal courts are courts of limited jurisdiction," the Court must have a statutory basis to exercise its jurisdiction.  *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); *see* Fed. R. Civ. P. 12(b)(1).  Statutes conferring subject-matter jurisdiction on federal courts are to be strictly construed.  *F & S Const. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964).  "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction."  *Id.* (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

A motion to dismiss pursuant to Rule 12(b)(1) may take two forms: facial attack or factual attack. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).  When reviewing a facial attack on a complaint, the Court accepts the allegations of the complaint as true. *Id.*  By contrast, when reviewing a factual attack on a complaint, the Court "may not presume the truthfulness of the complaint's factual allegations." *Id.* at 1003.  With a factual attack, the moving party challenges the facts upon which subject-matter jurisdiction depends. *Id.*  The Court therefore must make its own findings of fact. *Id.*  In order to make its findings regarding disputed jurisdictional facts, the Court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing." *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990); *Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir.), *cert. denied*, 484 U.S. 986 (1987)).  The Court's reliance on

"evidence outside the pleadings" to make findings concerning purely jurisdictional facts does not convert a motion to dismiss pursuant to Rule12(b)(1) into a motion for summary judgment pursuant to Rule 56. *Id.*

**B.     Fed. R. Civ. P. 12(b)(6)**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed. R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted"). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind,* 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted). To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570); *see also Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." (quoting *Twombly*, 550 U.S. at 570)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s]

devoid of further factual enhancement." *Id.* (brackets in original; internal quotation marks omitted).

To survive a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a factual allegation has been stated, "but it has not show[n][]that the pleader is entitled to relief," as required by Fed. R. Civ. P. 8(a). *Iqbal*, 552 U.S. at 679 (second brackets added; citation and internal quotation marks omitted).

## III.  Analysis

### A.      Eleventh Amendment Immunity

Defendants first raise the issue of Eleventh Amendment immunity. *Motion* [#38] at 3. This challenges the court's subject matter jurisdiction. *Robinson v. Kansas*, 295 F.3d 1183, 1188 (10th Cir. 2002). The Eleventh Amendment bars recovery of monetary damages from individual state Defendants sued in their official capacities. *Dreismeier v. Fauvel*, No. 12-cv-01131-KLM, 2013 WL 1365766, at *3 (D. Colo. Apr. 3, 2013). To the extent that Plaintiff sues Defendants in their official capacities, "[s]uits against state officials in their official capacit[ies] should be treated as suits against the state." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)); *see also Duncan v. Gunter*, 15 F.3d 989, 991 (10th Cir. 1994) (stating that state officers sued in their official capacity are not "persons" subject to suit under 42 U.S.C. § 1983). Thus, pursuant to the Eleventh Amendment, the Court lacks subject matter jurisdiction to adjudicate an action brought by a citizen of a state against the state itself, its agencies, or its officials in

their official capacities for monetary relief.  *See Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir. 1995).

Therefore, Eleventh Amendment immunity bars claims against individuals sued in their official capacities "for money damages and relief for prior acts."  *See Hunt v. Colo. Dep't of Corr.*, 271 F. App'x 778, 781 (10th Cir. 2008).  Here, all Defendants are state officers with the Colorado Department of Corrections.   Consequently, the Court recommends that all of Plaintiff's official capacity claims asserted against these Defendants for monetary relief be **dismissed without prejudice** for lack of subject matter jurisdiction on the basis of Eleventh Amendment immunity.  *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216-1217 (10th Cir. 2006) ("[W]here the district court dismisses an action for lack of jurisdiction, . . . the dismissal must be without prejudice." (citations omitted)).

## B.     Mootness

Defendants next argue that Plaintiff's claims for declaratory and injunctive relief are now moot because Plaintiff is undisputedly no longer housed at CTCF.  *Motion* [#38] at 14. In his Response, Plaintiff does not concede that the relief he requests is moot.  *Response* [#42] at 10-12.  He argues that the issues raised in the Second Amended Complaint are not moot because his new facility, Sterling Correctional Facility, also suffers from uranium contamination in the public drinking water, and because Plaintiff still suffers from a wide variety of physical ailments.  *Id.*  By seeking dismissal on the basis of mootness, Defendants request a ruling on whether the Court has subject matter jurisdiction over this action.  *See Motion* [#38] at 14.  The Court therefore addresses this argument next.  *See Herrara v. Alliant Specialty Ins. Servs., Inc.*, No. 11-cv-00050-REB-CBS, 2012 WL 959405,

at *3 (D. Colo. Mar. 21, 2012) (stating that issues of subject matter jurisdiction "must be resolved before the court may address other issues presented in the motion").

Mootness is an issue of subject matter jurisdiction, which can be raised at any stage of the proceedings.[7] *Kennedy v. Lubar*, 273 F.3d 1293, 1301-02 (10th Cir. 2001).  This Court has no jurisdiction to consider moot cases, that is, cases in which "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980) (citation omitted).  "It is a basic principle of Article III that a justiciable case or controversy must remain extant at all stages of review, not merely at the time the complaint is filed." *Deberry v. Davis*, 460 F. App'x 796, 799 (10th Cir. 2012) (internal quotations and citation omitted).  A claim may become moot at any point in the controversy and deprive the Court of authority to decide questions which had previously been at issue.  *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477-78 (1990).  "[I]t is therefore not enough that the dispute was alive when the suit was filed; the parties must continue to have a personal stake in the outcome." *McLendon v. City of Albuquerque*, 100 F.3d 863, 867 (10th Cir. 1996).

Much of the relief sought by Plaintiff is declaratory and injunctive in nature.  *See Second Am. Compl.* [#21] at 25-26 (stating that Plaintiff seeks a declaratory judgment that Defendants' acts, policies, and practices violate Plaintiff's rights and liberty interests under the Eighth Amendment, as well as various forms of injunctive relief, including forcing Defendants to provide him with "a qualified opinion from a conflict-free expert physician,

---

[7] The Court may also consider the question of subject matter jurisdiction sua sponte at any time.  *McAlester v. United Air Lines, Inc.*, 851 F.2d 1249, 1252 (10th Cir. 1988); *Smith v. Krieger*, 643 F. Supp. 2d 1274, 1293 n.6 (D. Colo. 2009).

with experience in disorders related to environmental toxins and radiation exposure"). Despite Plaintiff's assertion that the issues relating to his claims are not moot and that nothing will change without this law suit moving forward, his transfer from CTCF to Sterling Correctional Facility means that much of the relief he requests is moot because he no longer has a personal stake in this matter against the defendants named in his Second Amended Complaint. *See McLendon*, 100 F.3d at 867; *Geraghty*, 445 U.S. at 396 (stating that application of the mootness doctrine requires examination of whether "the parties lack a legally cognizable interest in the outcome"). To illustrate, the Court briefly discusses application of the mootness doctrine to the relief Plaintiff seeks.

"Where a plaintiff seeks both an injunction and declaratory relief, the district court has a duty to decide the appropriateness and the merits of the declaratory request irrespective of its conclusion as to the propriety of the issuance of an injunction." *Jordan v. Sosa*, 654 F.3d 1012, 1025 (10th Cir. 2011) (internal quotations omitted) (quoting *Super Tire Eng'g Co. v. McCorckle*, 416 U.S. 115, 121 (1974)). "It is well established that what makes a declaratory judgment action a proper judicial resolution of a case or controversy rather than an advisory opinion is the settling of some dispute which affects the behavior of the defendant toward the plaintiff." *Id.* (citations omitted). In other words, "where a plaintiff seeks a declaratory judgment against his opponent, he must assert a claim for relief that, if granted, would affect the behavior of the particular parties listed in his complaint." *Id.*

Here, Plaintiff seeks a declaratory judgment that his constitutional rights were violated. However, even if the Court were to grant his request, the declaratory judgment would not "affect[ ] the behavior of defendant[s] toward the plaintiff," because Defendants

would not be required to take any course of action.  *See Rhodes v. Stewart*, 488 U.S. 1, 4 (1988).  Plaintiff is no longer housed at CTCF.  *Response* [#42] at 11.  Therefore, whether or not the Court grants Plaintiff's request for declaratory judgment, Defendants' future behavior toward Plaintiff will not be affected, because a holding that Plaintiffs' constitutional rights have been violated would not necessitate changes in how he is being treated by these Defendants.  In other words, Plaintiff is seeking a retrospective opinion that Defendants wrongly harmed him, which is an impermissible use of a declaratory judgment.  *See Ashcroft v. Mattis*, 431 U.S. 171, 172 (1977) (holding that a claim for declaratory relief was moot where the "primary claim of a present interest in the controversy is that [the plaintiff] will obtain emotional satisfaction from [the] ruling"); *Green v. Branson*, 108 F.3d 1296, 1299 (10th Cir. 1997) ("This 'legal interest' must be more than simply the satisfaction of a declaration that a person was wronged.").

Plaintiff's requests and supporting allegations found in the Complaint simply do not state "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941).  The Court therefore finds that Plaintiff's request for declaratory judgment is moot.  *See Green*, 108 F.3d at 1300 (conditions of confinement claim mooted by transfer and release of inmate) (citing *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993) (inmate's suit for declaratory judgment as to whether correctional officers violated his constitutional rights by opening his privileged mail outside his presence was rendered moot by inmate's release from prison)).

The Court next briefly turns to the injunctive relief sought by Plaintiff.  "Where a plaintiff seeks an injunction, his susceptibility to continuing injury is of particular

importance—'[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'"   *Jordon*, 654 F.3d 1012, 1024 (10th Cir. 2011) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)).   Plaintiff has not alleged facts illustrating that he is being injured in an ongoing and continuous manner based on actions by these Defendants.[8]   He has simply not alleged the "real and immediate" injury by these Defendants necessary for entry of injunctive relief.   *See Rizzo v. Goode*, 423 U.S. 362, 372 (1976) (stating that claim for injunctive relief was moot where allegations of "real and immediate" injury were attenuated).   The Court therefore finds that Plaintiff's requests for injunctive relief are moot as well.   *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir.1985) (prisoner's claims for injunctive and declaratory relief concerning prison conditions were moot where prisoner had been moved to another prison unit); *Inmates v. Owens*, 561 F.2d 560, 562 (4th Cir. 1977) (when a prisoner is released from prison, there is no longer a substantial controversy between the former inmate and prison officials of sufficient immediacy and reality to warrant the issuance of either injunctive or declaratory relief)).

In light of the above-stated legal precedent, the Court lacks subject matter jurisdiction over the non-monetary portion of Plaintiff's claims.   If the Court issued an order granting the relief requested, the order would be an impermissible advisory opinion regarding Defendants and would have no "effect in the real world" for Plaintiff.   *See Jordan*, 654 F.3d at 1029.   "[A]s a federal court, [the Court is] not in the business of rendering such

---

[8]   Although Plaintiff alleges various ongoing health issues, all staff he sues are employed at CTCF.   No allegations have been made regarding any request for medical care at his present correctional facility.

feckless judgments." *Deberry*, 460 F. App'x at 799.  Thus, the mootness doctrine precludes Plaintiff's constitutional claims and precludes any declaratory judgment or injunctive relief that could be imposed against Defendants.  *See Jordan*, 654 F.3d at 1026 (if the plaintiff has not named as defendants "individuals or entities that are actually situated to have their future conduct toward the plaintiff altered by the court's declaration of rights . . . , courts are likely to determine that they cannot accord the plaintiff effective declaratory relief and that the action is moot.").

In sum, the Court **recommends** that the Motion be granted and that Plaintiff's claims for declaratory and injunctive relief be **dismissed without prejudice as moot** for lack of subject matter jurisdiction.  *See Lewis v. Burger King*, 398 F. App'x 323, 325 n.3 (10th Cir. 2010) (dismissal due to mootness must be without prejudice); *Brereton*, 434 F.3d at 1216-17.

## C.    Qualified Immunity

Defendants argue that, to the extent Plaintiff seeks to hold them individually liable for monetary damages, they are entitled to qualified immunity.  *Motion* [#38] at 4-5.  "The doctrine of qualified immunity shields government officials performing discretionary functions from liability for damages 'insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known.'"  *Boles v. Neet*, 486 F.3d 1177, 1180 (10th Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  When the defense of qualified immunity is raised, the Court must consider whether Plaintiff's factual allegations demonstrate that Defendants violated a constitutional right and, secondly, whether that constitutional right was clearly established at the time of

the alleged violation.  *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001).  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."  *Id.*  However, "if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established."  *Id.*  In *Pearson v. Callahan*, 555 U.S. 223 (2009), the Supreme Court held that a court may review these factors in any order, using its discretion to determine which of the factors to review first in light of the circumstances of the case.  *Id.* at 236.  Because the Court finds that Plaintiff's factual allegations fail to demonstrate that Defendants violated a constitutional right, the Court does not need to address whether that constitutional right was clearly established at the time of the alleged violation.

### 1.    Claim 2

Plaintiff's Claim 2 appears to include two factual components, the first relating to inadequate medical treatment and the second to conspiracy to harass.  *See Motion* [#38] at 5-9.  The Court addresses each in turn.

### a.    Inadequate Medical Treatment

Plaintiff also appears to assert two factual components of this claim.  First, he asserts that Defendants Tessier, Tiona, and Buglewicz failed to properly diagnose and treat medical problems resulting in Plaintiff's many alleged medical problems discussed in the Summary of the Case above.  Second, Plaintiff asserts that Defendants Williams, Turner, and Burns denied him bottled oxygen on multiple occasions between December 2011 and September 25, 2012.

The Eighth Amendment requires that "prison officials ... ensure that inmates receive

adequate food, clothing, shelter, and medical care, and [that they] 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted). The Court's analysis of Plaintiff's Eighth Amendment claim involves both an objective and a subjective component. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

As to the objective component, the Court considers whether Plaintiff was deprived of a sufficiently serious basic human need, i.e., an extreme deprivation. "Because discomfort is 'part of the penalty that criminal offenders pay for their offenses against society, . . . only those deprivations denying 'the minimal civilized measures of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citations omitted). Here, the issues are allegedly inadequate medical care by Defendants Tessier, Tiona, and Buglewicz and allegedly delayed medical care by Defendants Williams, Turner, and Burns.

Beginning with the alleged inadequate medical care by Defendants Tiona, and Buglewicz, "a medical need is considered 'sufficiently serious' if the condition 'has been diagnosed by a physician as mandating treatment . . . or is so obvious that even a lay person would easily recommend the necessity for a doctor's attention.'" *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001) (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 2001)). The Tenth Circuit has held that "(1) a medical professional failing to treat a serious medical condition properly; and (2) a prison official preventing an inmate from receiving medical treatment or denying access to medical personnel capable of evaluating the inmate's condition" may "constitute deliberate indifference in a prison medical case." *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) (citing *Sealock v. Colorado*, 218 F.3d

1205, 1211 (10th Cir. 2008)).

Plaintiff alleges that he has received a wide variety of medical treatments for his various ailments, including vitamin injections for his $B_{12}$ deficiency, a blood transfusion and colonoscopy test, surgical treatment for gallstones, assessments for a kidney cyst and hyperthyroidism, and anti-inflammatory steroidal ointment for a chronic fungal infection of the skin.  As Defendants note, Plaintiff does not allege that he has been denied medical treatment for several other named conditions, such as muscular degeneration and a cyst on his neck.  *Motion* [#38] at 6.  An inmate's difference of opinion concerning the medical treatment that he received or did not receive does not generally support a claim for cruel and unusual punishment.   *Olsen v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993).   A "prisoner's right is to medical care—not to the type or scope of medical care which he personally desires."  *Henderson v. Sec'y of Corr.*, 518 F.2d 694, 695 (10th Cir. 1975) (citation omitted).  To the extent that Plaintiff, in his opinion, asserts that Defendants did not satisfactorily perform their duties in timely authorizing the precise type of medical care which Plaintiff desires, "such a difference of opinion [arguably] amounts to a medical malpractice claim . . . [which] cannot be the basis for a federal [§ 1983] action . . . .  [A] medical malpractice claim does not become a constitutional violation simply because the plaintiff is a prisoner."  *Pearson v. Simmons*, No. Civ.A. 95-3006-GTV, 1998 WL 154552, at *2 (D. Kan. Mar.17, 1998) (citations omitted) (noting that inmate's allegation that defendants were deliberately indifferent to his medical injury based upon a disagreement about the level of care he received for that injury did not state an Eighth Amendment claim).  Thus, Plaintiff's Claim 2 against Defendants Tiona and Buglewicz, his medical doctors, fails.

To the extent that Plaintiff raises an issue related to delay in receiving medical treatment in connection with the alleged short-term deprivation of oxygen tanks, "[d]elay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm." *Sealock*, 218 F.3d at 1210 (noting that "not every twinge of pain suffered as the result of delay in medical care is actionable"). Plaintiff asserts in the Second Amended Complaint that he was at times out of oxygen and that he was repeatedly denied bottled oxygen refills/replacements.  He also asserts that by the time he was permitted oxygen, his "blood oxygen level had dropped below safe levels, creating a risk of pulmonary and heart failure." *Response* [#42] at 6-7 (paraphrasing *Second Am. Compl.* [#21] at 19).  However, Plaintiff makes no allegation that the delay actually resulted in substantial harm, as required by *Sealock*.  In fact, Plaintiff does not allege any harm whatsoever.  Rather, he merely alleges a "risk" of harm. *Response* [#42] at 7.  Thus, Plaintiff's Claim 2 for an Eighth Amendment violation by Defendants Williams, Turner, and Burns fails.

Finally, regarding the portion of Claim 2 made against Defendant Tessier, the Health Services Administrator, there are no allegations that Defendant Tessier, as a lay person, was aware that an MRI was a necessity.  In fact, Plaintiff alleges that "CDOC Colorado Springs" denied the MRI, and that Defendant Tessier merely sustained the decision. Without more, the Court cannot find that Defendant Tessier "kn[ew] of and disregard[ed] an excessive risk to inmate health and safety." *Farmer*, 511 U.S. at 837.  That is, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* The subjective component requires a showing of "obduracy and wantonness." *Whitely v.*

*Albers*, 475 U.S. 312, 319 (1986).

This standard recognizes a balance between "the exigencies of running a prison" and the "'broad and idealistic concepts of dignity, civilized standards, humanity and decency.'" *DeSpain v. Uphoff*, 264 F.3d 965, 973 (10th Cir. 2001) (quoting *Estelle v. Gamble*, 429 U.S. 97, 102 (1976)).  Thus, while prison officials must take reasonable measures in securing a safe and humane environment for prisoners, the Court should take into account the circumstances of the challenged conduct.  *Id.* at 974; *see also Hudson*, 503 U.S. at 5-6 (holding that a court should give wide-ranging deference to prison staff).  Thus, Plaintiff's Claim 2 for an Eighth Amendment violation by Defendants Tessier fails.

Plaintiff is correct that he is entitled to medical care while incarcerated.  However, Plaintiff does not allege that Defendants deprived him of medical care generally; instead, he readily concedes that Defendants provided him with a wide range of medical care. Accordingly, to the extent that Plaintiff alleges only that he was not provided with "the type or scope of medical care which he personally desires," *Henderson*, 518 F.2d at 695, Plaintiff does not demonstrate that he possessed a protected liberty interest in receiving the medical care he desired.

Accordingly, the Court finds that Defendants Tessier, Tiona, Buglewicz, Williams, Turner, and Burns are entitled to qualified immunity on Plaintiff's Claim 2 for violation of the Eighth Amendment, and that this claim should be **dismissed with prejudice**.  *See Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990).

### b.    Conspiracy to Harass

Plaintiff appears to assert an Eighth Amendment conspiracy claim regarding alleged

harassment by prison officials, specifically alleging that Defendant Williams assigned him to a second floor cell and that Defendant Burns ordered him to return to his cell when Plaintiff was attempting to get a new, full oxygen bottle.

The Tenth Circuit has stated that "a conspiracy to deprive a plaintiff of a constitutional or federally protected right under the color of state law" is actionable. *Snell v. Tunnell*, 920 F.2d 673, 701 (10th Cir. 1990). However, in order to succeed on a conspiracy claim under 42 U.S.C. § 1983, "a plaintiff must plead and prove not only a conspiracy, but also an actual deprivation of rights; pleading and proof of one without the other will be insufficient." *Id.* Further, "[w]hile a deprivation of a constitutional right is essential to proceed under a § 1983 claim, proof of an agreement to deprive will often require examination of conduct occurring prior to the deprivation." *Id.* at 701-02. To establish the existence of a conspiracy, a plaintiff seeking redress must show that there was a "single plan, the essential nature and general scope of which [was] known to each person who is to be held responsible for its consequences." *Id.* (internal citations omitted).

Here, because the Court finds that Plaintiff is not entitled to relief on his Eighth Amendment claims, Defendants cannot be guilty of participating in a conspiracy to violate these constitutional rights. *See Snell*, 920 F.2d at 701. Moreover, since the Court has determined that Defendants are entitled to qualified immunity on Plaintiff's underlying Eighth Amendment claims, "by definition, Plaintiff[ ] fail[s] to state a claim for conspiracy." *Gehl Group v. Koby*, 838 F. Supp. 1409, 1419 (D. Colo.1993). Accordingly, the Court **recommends** that this claim be **dismissed with prejudice**. *See Reynoldson*, 907 F.2d at 127.

2.      **Claim 3**

In Claim 3, Plaintiff alleges that the conditions of his confinement violate the Eighth Amendment to the United States Constitution.  Defendant Achen seeks qualified immunity on all aspects of Claim 3 against him except for the food-sanitation component.  *Motion* [#38] at 12.

The Eighth Amendment provides protection against cruel and unusual punishment. This protection imposes a duty on prison officials to maintain humane conditions of confinement, including adequate food, clothing, shelter, sanitation, medical care, and a duty to provide inmates with reasonable protection from serious bodily harm.  *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008).  "To prevail on a 'conditions of confinement' claim under the Eighth Amendment, an inmate must establish that (1) the condition complained of is 'sufficiently serious' to implicate constitutional protection, and (2) prison officials acted with 'deliberate indifference' to inmate health or safety."  *DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (internal quotation marks omitted).  As to the first requirement, an inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.  *Id.*

The deliberate indifference requirement provides that a prison official must act wantonly or willfully and have a "sufficiently culpable state of mind."  *Farmer*, 511 U.S. at 834-35 (quotation omitted).  "[T]he Supreme Court has explained that 'deliberate indifference entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result.'"  *DeSpain*, 264 F.3d at 972 (quoting *Farmer*, 511 U.S. at 835).  "The Court defined this 'deliberate indifference' standard as equal to 'recklessness,' in which 'a person disregards a risk of harm of which he is aware.'"  *Id.* (quoting *Farmer*, 511 U.S. at 836-37).

The test for deliberate indifference is both objective and subjective. *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). "The objective component of the test is met if the 'harm suffered rises to a level sufficiently serious to be cognizable under the Cruel and Unusual Punishment Clause' of the Eighth Amendment." *Id.* (quoting *Mata v. Saiz*, 427 F.3d 745, 752-53 (10th Cir. 2005)). To prevail on the first prong, even severe restrictions do not satisfy the objective component if the inmate is not deprived of "the minimal civilized measure of life's necessities." *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998). For example, this Court recently found that the conditions of confinement at ADX do not rise to the level of an Eighth Amendment violation, "nor do they constitute an atypical and significant hardship sufficient to give rise to a liberty interest." *Georgacarakos v. Wiley*, No. 07-cv-01712-MSK-MEH, 2010 WL 1291833, at *12 (D. Colo. Mar. 30, 2010). "The conditions at ADX are undoubtedly extremely restrictive. However, they are not so extreme or inhumane that they could be deemed a significant departure from contemporary standards of decency, applied to the prison context." *Id.* Additionally, the Tenth Circuit has also concluded that the conditions of ADX do not violate the Eighth Amendment. *See Ajaj v. United States*, 293 F. App'x 575, 582-84 (10th Cir. 2008) (finding conditions such as "lockdown 23 hours per day in extreme isolation," "indefinite confinement," and "limited ability to exercise outdoors" did not, individually or in concert, amount to an 8th Amendment violation). Based on the Court's review of the Second Amended Complaint, the Court finds that Plaintiff has failed to make sufficient allegations to establish that he has been deprived of life's most basic needs. Plaintiff states that he receives meals and water and is housed in a cell. Plaintiff's primary complaint seems to be that the quality of these necessities is not sufficient. The Court finds that Plaintiff's allegations fail to satisfy the objective

component of the deliberate indifference test.

However, even if Plaintiff were to meet the objective component, he still fails on the subjective component. To prevail on the subjective component of the deliberate indifference test, an inmate must show that the prison official: (1) knows of a substantial risk of serious harm posed to the inmate and (2) disregards that risk by failing to take reasonable steps to abate the risk. *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). To recklessly disregard a risk, "[a] prison official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw that inference." *Farmer*, 511 U.S. at 837. "[E]ven if a prison official has knowledge of a substantial risk of serious harm to inmates, he is not deliberately indifferent to that risk unless he is aware of and fails to take reasonable steps to alleviate that risk." *Id.* Finally, the Tenth Circuit has indicated that the subjective component requires the prison official to disregard the specific risk of harm claimed by the prisoner, not a more general risk. *Id.*

Here, Plaintiff has failed to show that Defendant Achen knew harm existed and acted with deliberate indifference to cause it. Plaintiff's allegations regarding the water at CTCF fail to show that Defendant Achen acted with a culpable state of mind. Merely stating that Defendant Achen personally used bottled water and refused to drink tap water at CTCF is insufficient to demonstrate that he knew of a "substantial risk of serious harm to inmates." *Farmer*, 511 U.S. at 837. Thus, this portion of Plaintiff's Eight Amendment claim fails and should be dismissed. Furthermore, since Plaintiff has not established a necessary element of an Eighth Amendment constitutional violation, he cannot satisfy the first prong of the qualified immunity analysis. *Saucier*, 533 U.S. at 201 (holding that "[i]f no constitutional right would have been violated were the allegations established, there is no necessity for

further inquiries concerning qualified immunity."). Therefore, Defendant Achen is entitled to qualified immunity on Plaintiff's Eighth Amendment claim, except for the food-sanitation component. *Motion* [#38] at 12.

Accordingly, the Court thus **recommends** that Plaintiff's third claim for violation of the Eighth Amendment against Defendant Achen in his individual capacity be **dismissed with prejudice**, with the exception of the food-sanitation component. *See Reynoldson*, 907 F.2d at 127.

**D.     Prison Litigation Reform Act**

Defendants seek dismissal of Plaintiff's request for compensatory damages against Defendant Achen. *Motion* [#38] at 13. They argue that Plaintiff's claims for compensatory damages must be dismissed pursuant to the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. § 1997e(e) of the PLRA provides that "[n]o federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Pursuant to Section 1997e(e), Plaintiff's "suit cannot stand unless he has suffered a physical injury in addition to mental or emotional harms." *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 807 (10th Cir. 1999); *see also Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001) (holding that § 1997e(e) bars compensatory "damages for mental and emotional injuries in the absence of physical injury").

Plaintiff has asserted that food sanitation issues are one factor in the long-term decline of his health. As listed in the background section above, Plaintiff has provided a long list of physical ailments. While it is difficult to discern precisely which injuries may be

attributed to food sanitation, Plaintiff has clearly alleged that some of his injuries result from this issue.  While a plaintiff's alleged physical injury "need not be substantial" to satisfy the § 1997e(e) requirement, it must be more than de minimis.  *Clifton v. Eubank*, 418 F. Supp. 2d 1243, 1245 (D. Colo. 2006) (citing *Mitchell v. Horn*, 318 F.3d 523, 536 (3rd Cir.2003)). "Physical pain, standing alone, is a de minimis injury . . . and, accordingly, fails to overcome the PLRA's bar . . . ."  *Id.* at 1246 (citing *Mata v. Saiz*, 427 F.3d 745, 755 (10th Cir. 2005); *Sealock*, 218 F.3d at 1210.  Reading the allegations in the Second Amended Complaint liberally, as I must, the Court finds that Plaintiff's allegations of injury rise to a level protected by the PLRA, and that, at this early stage of the litigation, Plaintiff's claims for compensatory damages should not be dismissed.

Accordingly, the Court **recommends** that the portion of Defendants' Motion seeking dismissal of Plaintiff's claim for compensatory damages against Defendant Achen in his individual capacity on the food sanitation issue be **denied**.

### IV.  Conclusion

For the foregoing reasons, the Court respectfully **RECOMMENDS** that the Motion [#38] be **GRANTED in part and DENIED in part** (as outlined above) and that Plaintiff's Claim Two and Claim Three be **DISMISSED with prejudice in part and without prejudice in part** (as outlined above), with the exception of the food-sanitation portion of Plaintiff's Claim Three against Defendant Achen in his individual capacity for monetary damages.  *See Motion* [#38] at 12.

IT IS HEREBY **ORDERED** that, pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written

objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).   A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.   *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: February 4, 2014

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge